UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL WITKIN,<br><br>   Plaintiff,<br><br>   v.<br><br>D. WISE, et al.,<br><br>   Defendants. | No. 2: 19-cv-0974 KJM KJN P<br><br><br>FINDINGS AND RECOMMENDATIONS |

Introduction

   Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the court is defendants' June 2, 2020 motion for partial summary judgment on the grounds that plaintiff failed to exhaust administrative remedies as to his retaliation and related state law retaliation claims.  (ECF No. 31.)  On August 24, 2020, plaintiff filed an opposition to defendants' motion for partial summary judgment.  (ECF No. 52.)  On August 31, 2020, defendants filed a reply.  (ECF No. 53.)

   For the reasons stated herein, the undersigned recommends that defendants' motion be granted.

////

////

1

Legal Standard for Summary Judgment

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil procedure 56 is met. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c)).

"Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the

form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1575 (9th Cir. 1990).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

By notice provided on February 28, 2020 (ECF No. 26) and June 2, 2020 (ECF No. 31-1), plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (*en banc*); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

Legal Standard for Exhaustion of Administrative Remedies

Section 1997e(a) of the Prison Litigation Reform Act of 1995 (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.§ 1997e(a).  Prisoners are required to exhaust the available administrative remedies prior to filing suit.  Jones v. Bock, 549 U.S. 199, 211 (2007); McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).

Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, unless "the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint."  Booth v. Churner, 532 U.S. 731, 736, 741 (2001); Ross v. Blake, 136 S. Ct. 1850, 1857, 1859 (2016).  The exhaustion requirement applies to all prisoner suits relating to prison life.  Porter v. Nussle, 534 U.S. 516, 532 (2002).  An untimely or otherwise procedurally defective appeal will not satisfy the exhaustion requirement.  Woodford v. Ngo, 548 U.S. 81, 90-91 (2006).

As the U.S. Supreme Court recently explained in Ross, 136 S. Ct. at 1856, regarding the PLRA's exhaustion requirement:

> [T]hat language is "mandatory": An inmate "shall" bring "no action" (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies.... [T]hat edict contains one significant qualifier: the remedies must indeed be "available" to the prisoner. But aside from that exception, the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any "special circumstances."

Id. (internal citations omitted).

Exhaustion of administrative remedies may occur if, despite the inmate's failure to comply with a procedural rule, prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process.  Reyes v. Smith, 810

4

F.3d 654, 659 (9th Cir. 2016) (although inmate failed to identify the specific doctors, his grievance plainly put prison on notice that he was complaining about the denial of pain medication by the defendant doctors, and prison officials easily identified the role of pain management committee's involvement in the decision-making process).

<u>Plaintiff's Claims</u>

This action proceeds on plaintiff's amended complaint filed August 12, 2019 as to defendants Wise, Broadstone, Zuniga and Matteson.  (ECF No. 12.)

Plaintiff alleges that on March 31, 2018, he was in the visiting room visiting with his family.  A correctional officer told plaintiff that plaintiff was seated at an ADA table and that plaintiff must leave the ADA table.  Plaintiff left the table.  Five minutes later, the correctional officer told plaintiff and his family to give up their chairs.  Plaintiff refused.  Five minutes later, two correctional officers arrived with a document stating that plaintiff's visit was terminated.  Plaintiff was escorted out of the visiting room.

Plaintiff later received a rules violation report charging him with refusing to obey a direct order based on what occurred in the visiting room.  Defendant Wise presided over the disciplinary hearing.  During the disciplinary hearing, plaintiff told defendant Wise that he would file a civil rights complaint if he felt his constitutional rights were transgressed during the hearing.  At this point, defendant Wise requested assistance.  Defendants Broadstone and Zuniga arrived with Sergeant Pierscinski.  The hearing reconvened and plaintiff again stated that he would file a civil rights action if his rights were transgressed.  Defendant Wise found plaintiff guilty of the rules violation.

Plaintiff alleges that as punishment for the rules violation, defendant Wise ordered plaintiff to lose 90 days of day-yard and visiting.  Plaintiff alleges that the next day plaintiff's supervisor, Correctional Officer Borshchin, told plaintiff that defendant Wise had told him (Borshchin) to make sure that plaintiff did not go outside during his work hours.  Correctional Officer Borshchin stated that, according to defendant Wise, plaintiff would receive another rules violation report if he was caught outside during work hours.  Plaintiff alleges that all other porters are permitted to go to the yard during their work hours as long as their work is done.

5

Plaintiff wrote a CDCR 22 Form addressed to defendant Wise. The form stated that as a third watch worker, plaintiff could not lose day-yard because that would deprive plaintiff of all outdoor exercise in violation of the Eighth Amendment. On May 5, 2018, defendant Wise came to plaintiff's housing unit to discuss the CDCR 22 Form with plaintiff. Plaintiff requested that defendant Wise correct the punishment to reflect a loss of night-yard. Defendant Wise responded, "you actually think I care about your constitutional rights? If you have a problem with it file a 602."

Plaintiff alleges that on February 10, 2019, he was found guilty of an unrelated offense. As punishment, plaintiff was assessed a loss of night-yard or morning-yard, reflecting the fact that a loss of evening or day-yard for plaintiff could cause a complete denial of all outdoor exercise.

Plaintiff alleges that on May 7, 2018, mandatory yard was announced in plaintiff's housing unit. Plaintiff told Correctional Officers Martinez and Wagner that he had lost all yard privileges and asked if he was expected to go to the mandatory yard. Correctional Officers Martinez and Wagner told plaintiff he had to go outside.

Plaintiff alleges that while he was outside, defendant Broadstone went to his bunk area and demolished it. Plaintiff's bunk was moved about three feet and his personal property was thrown around the dorm, in about a fifteen-foot radius. No obvious hiding spots had been investigated. It took plaintiff about three hours to clean up the mess.

The next day, plaintiff received a rules violation report issued by defendant Zuniga charging plaintiff with disobeying a direct order by going to mandatory yard. This disciplinary charge was later dismissed by Lieutenant Martinez "in the interest of justice."

Plaintiff alleges that following legal claims: 1) defendants Wise and Matteson allegedly violated plaintiff's Eighth Amendment right to outdoor exercise; 2) defendants Wise, Broadstone and Zuniga allegedly retaliated against plaintiff for threatening to bring a civil rights action in violation of the First Amendment; and 3) defendants Wise, Broadstone, Zuniga and Matteson allegedly violated the California Tort Claims Act based on the conduct alleged in support of the

////

1 | Eighth and First Amendment claims.[1]

2 | Defendants' Summary Judgment Motion

Defendants argue that plaintiff failed to administratively exhaust his First Amendment retaliation and related state law retaliation claims. As discussed above, plaintiff alleges that defendants retaliated against him for threatening to file a civil rights action during his disciplinary hearing. Plaintiff alleges that defendant Wise retaliated against him by imposing 90 days loss of day-yard. Plaintiff alleges that defendant Broadstone retaliated against him by "trashing" his dorm area. Plaintiff alleges that defendant Zuniga retaliated against him by filing false disciplinary charges.

Defendants argue that plaintiff submitted three grievances for final level review with reference to the claims raised in the instant action: CSP-S-18-1331, CSP-S-1710 and CSP-1181. (ECF No. 31-4 at 3.) The undersigned sets forth defendants' evidence regarding these grievances herein.

In grievance no. CSP-S-1131, processed to the final level of review, plaintiff alleged that he was wrongfully found guilty of a rules violation issued March 31, 2018; that he was denied due process at the April 23, 2018 disciplinary hearing; his equal protection rights were violated; and that the loss of day-yard privileges violated his right to outdoor exercise. (ECF No. 31-4 at 3; 11-14.) Grievance CSP-S-1131 did not allege retaliation by any named defendant. (Id.)

In grievance CSP-1181, signed by plaintiff on May 10, 2018, plaintiff described the subject of his appeal as "United States Constitution (First Amendment Retaliation) C/O Broadstone." (ECF No. 31-5 at 25.) This appeal alleged that defendant Broadstone destroyed his bunk area. (Id. at 23.) This appeal also described the circumstances leading up to the allegedly retaliatory search, including the disciplinary hearing presided over by defendant Wise. (Id. at 23-26.) Plaintiff also claimed that defendants Wise and Zuniga were involved in a conspiracy, although he did not allege that defendant Zuniga wrongly issued him a rules violation report, as

---

[1] On December 6, 2019, the court dismissed plaintiff's claim alleging that defendants conspired to violate his constitutional rights in violation of 42 U.S.C. § 1985 for failing to state a potentially colorable claim for relief. (ECF No. 19.)

alleged in the instant action. (Id.)

On May 14, 2018, grievance CSP-S-1181 was screened at the *second* level of review on a form labeled "CDC Form 695." (Id. at 28.) The screening memorandum stated that because plaintiff's grievance alleged staff behavior that could be considered misconduct, i.e., the alleged retaliatory cell search, it had been forwarded to the Warden for appropriate determination, i.e., whether to treat the grievance as a staff complaint. (Id.) The memorandum also stated that plaintiff's grievance contained multiple issues, i.e, the alleged staff misconduct and/or alleged Due Process violation possibly associated with the April 23, 2018 disciplinary hearing. (Id.) The memorandum stated that if plaintiff contended that his due process rights were violated, he had a right to file an appeal. (Id.) The memorandum also stated that if the Warden decided to process plaintiff's grievance as a routine, cell/bunk/property issue, plaintiff was allowed only one appeal issue. (Id.)

On May 16, 2018, grievance was CSP-S-1181 was screened at the *first* level of review on a form labeled "CDC Form 695." (Id. at 30.) The screening memorandum stated that the grievance "was rejected informing you that you could appeal one issue per 602 other than the staff complaint component. Clarify your issue." (Id.) In response, plaintiff wrote on the form that he was appealing a "conspiracy to retaliate." (Id.) Plaintiff wrote that he was raising the following retaliation claims: defendant Wise denied him outdoor exercise, defendant Zuniga issued a false rules violation and defendant Broadstone illegally searched his cell. (Id. at 30-31.)

On June 11, 2018, in a form labeled "CDC Form 695," grievance CSP-S-1181 was cancelled at the *second* level of review pursuant to California Code of Regulations title 15, § 3084.6(c)(3). (Id. at 33.) The June 11, 2018 memorandum cancelling the grievance stated that plaintiff continued to submit a rejected appeal while disregarding staff's previous instructions to correct the appeal. (Id.) The memorandum stated that on two previous occasions plaintiff was informed that his 602 was deemed by the Warden to be processed as a routine appeal and that plaintiff was informed to clarify his issue other than the staff complaint component and only appeal one issue per 602 grievance. (Id.) The memorandum informed plaintiff that he had a right to appeal the cancellation of his appeal. (Id.)

8

1    In response to the cancellation of grievance CSP-S-1181, plaintiff wrote that there was

2    "no need to appeal." (Id.)  Plaintiff wrote,

> This was rejected once. You put two 695s on it (May 14 and May 16), thus it doesn't meet § 3084.6 cancellation criteria…2nd, this has always been a routine appeal. You made it a staff complaint, not me. It's not a staff complaint, never was.  Try again.

6    (Id.)

7    On June 18, 2018, another CDC Form 695 was issued screening grievance CSP-S-1181 at

8    the *second* level, apparently in response to plaintiff's written comments in response to the June

9    11, 2018 cancellation of his grievance. (Id. at 35.)  This memorandum stated that plaintiff was

10   attempting to submit an appeal that had been previously cancelled. (Id.)  "Pursuant to CCR

11   3084.4 you are advised that this is considered misuse or abuse of the appeals process." (Id.)

12   On or around July 5, 2018, plaintiff submitted a new grievance, i.e., grievance CSP-S-18-

13   1710, in which he challenged the cancellation of grievance CSP-S-1181. (Id. at 37.)

14   It appears the first level of review for grievance CSP-18-1710 was bypassed at the first

15   level of review. (Id.)

16   On August 3, 2018, a memorandum was issued addressing plaintiff's second level appeal

17   of grievance CSP-S-18-1710. (Id. at 42-47.)  The memorandum stated that plaintiff requested

18   that his cancelled appeal no. CSP-S-18-1181 be processed. (Id. at 45.)  The memorandum found

19   that CSP-S-18-1811 was properly cancelled for containing multiple issues. (Id.)  The

20   memorandum also (confusingly) stated that plaintiff's appeal was granted. (Id. at 44, 45.)

21   In a declaration submitted in support of defendants' summary judgment motion, CSP-

22   Solano Appeals Coordinator Petty states that at the second level of review, grievance CSP-S-1710

23   upheld the cancellation of grievance CSP-S-18-1811. (Id. at 5.)

24   The undersigned observes that the August 3, 2018 memorandum addressing plaintiff's

25   second level appeal of grievance CSP-S-18-1710 acknowledges issues with the responses to

26   grievance CSP-S-18-1181.  The August 3, 2018 memorandum states that it "may appear SOL

27   Appeals Office may have failed to clearly inform appellant … that appeal CSP-S-18-1811 would

28   not be processed as a Staff Complaint." (Id. at 45.)  The August 3, 2018 memorandum also states

1 that that plaintiff's "allegations CSP-S-18-01181 was initially rejected twice at the Second and
2 First levels on May 14 and 16 (year presumed to be 2018) and then returned to appellant appears
3 to have some merit." (Id.)

4       Plaintiff appealed grievance CSP-S-1710 to the third level review. On December 5, 2018,
5 the third level of review granted plaintiff's appeal in part. (ECF No. 31-4 at 69-70.) The third
6 level response found that grievance CSP-S-1811 raised one issue: defendant Broadstone
7 conducted a retaliatory cell search. (Id.) The third level decision found that, "[w]hile the
8 examiner concurs that the appeal, on initial reading, may appear to present both a disciplinary
9 issue and a staff complaint issue, the examiner concludes that the appeal presents a single issue
10 alleging staff misconduct by CO Broadstone; there, the rejection of the appeal requesting
11 clarification was unnecessary." (Id. at 69.) The third level decision goes on, "[t]he central issue
12 of the appeal is clarified by the action requested in Part B wherein the appellant does not ask for a
13 review or dismissal of the RVR or any other disciplinary remedy, but requests the following: 'I
14 request damages and freedom from any further retaliatory misconduct.'" (Id.)

15       The third level decision in CSP-S-1710 directed CSP-Solano to accept and process
16 cancelled appeal no. CSP-S-1811 and to address plaintiff's claim that defendant Broadstone
17 ordered a mandatory yard and destroyed his bunk area by conducting a retaliatory search. (Id. at
18 70.)

19       In response to the third level decision in CSP-S-1710, on January 25, 2019 a second level
20 appeal response was issued in response to grievance CSP-S-18-1811. (ECF No. 31-5 at 49.) This
21 response addressed plaintiff's claim that defendant Broadstone conducted a retaliatory search.
22 (Id.) This grievance was partially granted. (Id. at 50.) Plaintiff's "request for no further
23 retaliation is granted in that no retaliation or reprisals will be taken against him." (Id.) Plaintiff's
24 request for damages was denied. (Id.) In addition, plaintiff's claim that staff devised a plan to
25 retaliate against him could not be substantiated. (Id.) Plaintiff was advised that if he was
26 dissatisfied with the response, he could submit the appeal for a third level of review. (Id.)

27       Plaintiff appealed the second level decision and the Office of Appeals directed CSP-
28 Solano to issue an amended second level response. (Id. at 5.) The order from the Office of

Appeals directing CSP-Solano to issue an amended response does not appear to be in the court file.

On May 5, 2019, an amended second level response to grievance CSP-S-1811 was issued. (Id. at 52-55.) The amended response reflects that plaintiff's claims against defendant Broadstone were investigated and could not be substantiated. (Id.) The amended response also stated that plaintiff could appeal the second level response to the third level. (Id.)

Plaintiff did not appeal grievance CSP-S-1811 to the third level of review. (ECF No. 31-4 at 5.)

Discussion

Defendants move for summary judgment as to plaintiff's retaliation and related state law claims on the grounds that plaintiff failed to exhaust administrative remedies.[2] Defendants argue that in the grievances described above, plaintiff did not raise his claims alleging that defendants Zuniga and Wise retaliated against him. Defendants also argue that although grievance CSP-S-1811 raised plaintiff's claim alleging that defendant Broadstone retaliated against him, plaintiff did not pursue this grievance to the final level of review.

In the opposition, plaintiff argues that his alleged failure to exhaust administrative remedies is excused because prison officials wrongly cancelled CSP-S-1181 on three separate occasions. In support of this argument, plaintiff cites Sapp v. Kimbrell, 623 F.3d 813 (9th Cir. 2010).

The PLRA does not require the exhaustion of administrative remedies that have been rendered effectively unavailable. E.g., Sapp, 623 F.3d at 822. "[I]mproper screening of an inmate's administrative grievances renders administrative remedies 'effectively unavailable' such that exhaustion is not required under the PLRA." Id. at 823. "If prison officials screen out an inmate's appeals for improper reasons, the inmate cannot pursue the necessary sequence of appeals, and administrative remedies are therefore plainly unavailable." Id.

---

[2] Plaintiff's state law claims are subject to the same administrative exhaustion requirement under California law. See Ransom v. Lee, 2019 WL 1495040, *6 n. 8 (C.D. Cal. March 18, 2019); Franklin v. McDonnell, 2018 WL 6991084, *7 (C.D. Cal. Nov. 20, 2018).

11

However, the Ninth Circuit has held that "[t]he obligation to exhaust 'available' remedies persists as long as some remedy remains 'available.'" Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original). Generally, in California, a prisoner may appeal an improper cancellation under the regulations. See California Code of Regulations Title 15 § 3084.6(a)(3) and (e) (inmate can appeal cancellation decision separately pursuant to the rules in § 3084.6(c), and if inmate prevails, cancelled appeal can be considered at the discretion of the appeals coordinator).

In this case, plaintiff does not dispute that he appealed the cancellation of grievance CSP-S-1811 in grievance CSP-S-1710. Grievance CSP-S-1811 was reinstated in response to grievance CSP-S-1710. Therefore, procedures were available for plaintiff to challenge the cancellation of grievance CSP-S-1811, which plaintiff successfully availed. Thus, the improper cancellation of grievance CSP-S-1811 did not render administrative remedies effectively unavailable to plaintiff because there remained some remedy available to him through the appeals process. See Villery v. Beard, 2019 WL 250532, *10 (E.D. Cal. Jan. 17, 2019) (citing Wilson v. Zubiate, 718 F.App'x 479, 482 (9th Cir. 2017) ("[Plaintiff] had the possibility of appealing the cancellation decision and therefore cannot show that he was 'thwarted by improper screening' under Sapp, 623 F.3d at 823.").

In his opposition, citing Harvey v. Jordan, 605 F.3d 681 (9th Cir. 2010), plaintiff next argues that he was not required to file a third level grievance in grievance CSP-S-1811 because he was satisfied with the final response he received at the second level on May 5, 2019. Plaintiff also argues that he was not required to file a third level grievance because the relief he sought, money damages, was not available.

In Harvey, the Ninth Circuit held that the plaintiff "had exhausted the administrative process when the prison officials purported to grant relief that resolved his due process grievance to his satisfaction." Harvey, 605 F.3d at 686. The Ninth Circuit reasoned,

> An inmate has no obligation to appeal from a grant of relief, or a partial grant that satisfies him, in order to exhaust his administrative remedies. Nor is it the prisoner's responsibility to ensure that prison officials actually provide the relief that they have promised. See Abney v. McGinnis, 380 F.3d 663, 669 (2d Cir.2004) ("A prisoner

12

> who has not received promised relief is not required to file a new grievance where doing so may result in a never-ending cycle of exhaustion.").
>
> That [plaintiff] initially requested alternative forms of relief does not change our analysis. Once the prison officials purported to grant relief with which he was satisfied, his exhaustion obligation ended. His complaint had been resolved, or so he was led to believe, and he was not required to appeal the favorable decision. Were we to reach the contrary conclusion, any prisoner who expressed his willingness to accept more than one form of relief—demonstrating a flexibility that increases the likelihood of an outcome satisfactory to both the prisoner and the prison officials—would have no recourse when prison officials purported to grant one of those alternative forms of relief, but then failed to implement their decision.

605 F.3d at 685.

In Benitez v. Cty. of Maricopa, 667 F.Appx. 211, 212 (9th Cir. 2016), the Ninth Circuit clarified that the holding of Harvey "turned on the fact that the prisoner was induced into abandoning his appeal by the unfulfilled promise of relief."

On appeal, the plaintiff in Benitez argued that because the prison granted his request for an ADA accommodation, he had no obligation to appeal from the satisfactory resolution of his ADA grievance. Id. The Ninth Circuit found that the plaintiff's reliance on Harvey v. Jordan was misplaced because in Harvey,

> we explained that an "inmate has no obligation to appeal from a grant of relief, or a partial grant that satisfies him, in order to exhaust his administrative remedies." Id. at 685. But this case is not like Harvey, which turned on the fact that the prisoner was induced into abandoning his appeal by the unfulfilled promise of relief.

Id.

In Benitez, the plaintiff received the requested relief, i.e., the ADA accommodation. In contrast, the plaintiff in Harvey abandoned his appeal by the unfulfilled promise of relief.

Harvey v. Jordan is not applicable to the instant action because plaintiff does not claim that he abandoned grievance CSP-S-1811 by an unfulfilled promise of relief.

Plaintiff also alleges that his failure to exhaust administrative remedies is excused because the money damages he sought were not available through the administrative remedy process. This argument is without merit because administrative exhaustion is required even if the relief sought is not available in grievance proceedings, such as money damages. Porter v. Nussle, 534

13

U.S. 516, 524 (2002).

      The undersigned also finds that the third level response to grievance CSP-S-1710 correctly found that grievance CSP-S-1811 raised one issue: the alleged retaliatory search conducted by defendant Broadstone. As discussed above, plaintiff described the subject of his appeal as "United States Constitution (First Amendment Retaliation) C/O Broadstone." (ECF No. 31-5 at 25.) Plaintiff does not claim that he filed any other grievances raising his retaliation claims against defendants Wise and Zuniga.

      Accordingly, based on the record above, the undersigned finds that plaintiff failed to exhaust his retaliation claims against defendant Broadstone because plaintiff did not pursue grievance CSP-S-1811 to the final level of review. The undersigned also finds that plaintiff failed to exhaust his retaliation claims against defendants Wise and Zuniga because plaintiff failed to raise these claims in any grievance. Accordingly, defendants' motion for partial summary judgment should be granted.

      Accordingly, IT IS HEREBY RECOMMENDED that defendants' motion for partial summary judgment (ECF No. 31) be granted.

      These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: September 8, 2020

_Kendall J. Newman_
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Wit974.sj