1

2

3

4

5

6

7

8                                    UNITED STATES DISTRICT COURT

9                            FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    MICHAEL WITKIN,                              No.  2: 19-cv-0974 KJM KJN P

12                    Plaintiff,

13          v.                                     FINDINGS AND RECOMMENDATIONS

14    D. WISE, et al.,

15                    Defendants.

16

17    I.     Introduction

18          Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant

19    to 42 U.S.C. § 1983.  Pending before the court are cross-motions for summary judgment.  (ECF

20    Nos. 90, 94.)  For the reasons stated herein, the undersigned recommends that defendants'

21    summary judgment be granted and plaintiff's summary judgment motion be denied.

22    II.    Legal Standard for Summary Judgment

23          Summary judgment is appropriate when it is demonstrated that the standard set forth in

24    Federal Rule of Civil Procedure 56 is met.  "The court shall grant summary judgment if the

25    movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

26    judgment as a matter of law."  Fed. R. Civ. P. 56(a).

27                    Under summary judgment practice, the moving party always bears
                      the initial responsibility of informing the district court of the basis
28                    for its motion, and identifying those portions of "the pleadings,

                                                    1

> depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c)).  "Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case."  Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d

1  1564, 1575 (9th Cir. 1990).

2          In the endeavor to establish the existence of a factual dispute, the opposing party need not

3  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

4  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

5  trial." T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce

6  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

7  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

8  amendments).

9          In resolving a summary judgment motion, the court examines the pleadings, depositions,

10  answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R.

11  Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at

12  255.  All reasonable inferences that may be drawn from the facts placed before the court must be

13  drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587; Walls v. Central Costa

14  County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011).  Nevertheless, inferences are not

15  drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from

16  which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224,

17  1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a

18  genuine issue, the opposing party "must do more than simply show that there is some

19  metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could

20  not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

21  trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

22          By notice provided on February 28, 2020 (ECF No. 26), plaintiff was advised of the

23  requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil

24  Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v.

25  Eikenberry, 849 F.2d 409 (9th Cir. 1988).

26  ////

27  ////

28  ////

3

1      III.    <u>Plaintiff's Claims</u>

2           This action proceeds on plaintiff's verified second amended complaint as to defendants

3 Wise and Matteson.[1]  (ECF No. 49.)

4           Plaintiff alleges that on March 31, 2018, he was sitting in the visiting room at California

5 State Prison-Solano ("CSP-Solano") with his brother, sister-in-law, niece and two nephews.  (<u>Id.</u>

6 at 3.)  Officer Airey approached the table where plaintiff and his family sat.  (<u>Id.</u>)  Officer Airey

7 asked if anyone at the table was "ADA."  (<u>Id.</u>)  Plaintiff responded that he and his family were on

8 an "excessive distance" visiting appointment and did not wish to be further disturbed.  (<u>Id.</u>)

9 Officer Airey walked away.  (<u>Id.</u>)

10           Approximately five minutes later, Officer Airey returned.  (<u>Id.</u>)  Officer Airey told

11 plaintiff that he was seated at an ADA table that happened to be located in the children's area and

12 that plaintiff's lower bunk chrono had expired three days earlier.  (<u>Id.</u>)  Officer Airey told plaintiff

13 that he had to surrender his table.  (<u>Id.</u>)  Plaintiff told Officer Airey that he had already requested

14 no further harassment and asked Officer Airey to step away.  (<u>Id.</u>)  Officer Airey refused to step

15 away, telling plaintiff, "I need that table."  (<u>Id.</u>)  Plaintiff saw that there were some "purported

16 ADA visitors" standing off to the side, so plaintiff slid the table over to these visitors.  (<u>Id.</u> at 3-4.)

17 Officer Airey stepped away.  (<u>Id.</u> at 4.)

18           Five minutes later, Officer Airey returned with a female colleague.  (<u>Id.</u>)  Officer Airey

19 demanded that plaintiff and his family give up their chairs.  (<u>Id.</u>)  Plaintiff laughed and responded,

20 "Why would we do that when there are hundreds of the same chairs stacked right there against the

21 wall where anyone can go get some."  (<u>Id.</u>)  Plaintiff stated that he would do anything that "CCR"

22 said he was required to do, but nothing else.  (<u>Id.</u>)

23           Officer Airey returned five minutes later with a document stating that plaintiff's visit was

24 terminated.  (<u>Id.</u>)  Plaintiff was escorted out of the visiting room and his visit was terminated.

25 (<u>Id.</u>)  Plaintiff was issued a Rules Violation Report for refusing to obey a direct order.  (<u>Id.</u>)

26 ////

---

[1] The remaining defendants and claims in the second amended complaint are dismissed.  (ECF No. 65.)

Plaintiff alleges that defendant Wise presided over the disciplinary hearing.  (Id.)  Plaintiff requested to present the surveillance video from the visiting room as evidence.  (Id. at 4-5.) Plaintiff alleges that defendant Wise pretended to make a few calls and then declared the video tape unavailable.  (Id.)  Plaintiff alleges that he knew defendant Wise was lying because the video tape had already been used to convict other inmates plaintiff knew of various offense involving their activities at the March 31, 2018 visit.  (Id.)

Plaintiff alleges that defendant Wise denied his request to call inmate Maxwell as a witness.  (Id.)  Plaintiff also alleges that defendant Wise wrongly declared irrelevant plaintiff's questions for the reporting employee, i.e. Officer Airey.  (Id. at 11.)

As legal claims, plaintiff alleges that defendant Wise violated his right to due process and state law during the disciplinary hearing by denying his request to present the surveillance video, denying his request to call inmate Maxwell as a witness, and refusing to allow him to ask the reporting employee certain questions.  (Id.)

Plaintiff also alleges that defendant Wise violated the Eighth Amendment and state law by imposing a 90-days loss of outdoor exercise after finding plaintiff guilty of the rules violation. (Id. at 9-11.)  Plaintiff alleges that defendant Matteson violated the Eighth Amendment and state law by upholding defendant Wise's decision to impose the 90-days loss of outdoor exercise.  (Id.)

IV.     Defendants' Summary Judgment Motion

A.  Undisputed Facts

Defendants filed a statement of undisputed facts.  (ECF No. 90-3.)  Plaintiff filed a response to defendants' statement of undisputed facts, disputing defendants' fact nos. 9, 11, 14, 15, 17, 18, 20, 25, 26, 29, 31 and 32.  (ECF No. 99-1.)  While the undersigned herein acknowledges these disputed facts, the undersigned addresses the merits of these disputes, where relevant, in the discussion of the claims.

1.  Undisputed:  Plaintiff is a prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR").  (ECF No. 90-3 at 1-2.)  Plaintiff was housed at CSP-Solano, at times material to the matters at issue.  (Id. at 2.)

////

2. Undisputed:  At all relevant times, defendant Wise was employed by CDCR at CSP-Solano as a Correctional Lieutenant.  (Id.)  At all relevant times, defendant Matteson was employed by CDCR at CSP-Solano as a Chief Deputy Warden.  (Id.)

3. Undisputed:  At all relevant times, plaintiff was housed in Facility C at CSP-Solano, classified as a Level II inmate, and assigned to Privilege Group A1A.  (Id.)

4. Undisputed:  The Level II housing at CSP-Solano has open dormitories with bunk-style sleeping quarters rather than enclosed cells.  (Id.)

5. Undisputed:  Inmates assigned to Privilege Group A1A have the most privileges among all privilege groups within CDCR.  (Id.)  Inmates in this privilege group have the maximum access to yard, phone calls, visitation, canteen and personal property packages among all CDCR inmates.  (Id.)

6. Undisputed:  Specifically, with respect to yard time, inmates in Privilege Group A1A may access the yard any time the yard is open during the inmate's non-working hours.  (Id.)  Access to the yard is generally only limited by security needs.  (Id.)  Inmates in this privilege group may also access other recreational and entertainment activities any time during the inmate's non-working hours.  (Id.)

7. Undisputed:  Inmates assigned to Privilege Group A1A may be subject to a temporary loss of privileges when they are subject to a disciplinary imposition following a guilty finding on a rules violation report.  (Id.)

8. Undisputed:  Plaintiff was issued a rules violation report ("RVR") no. 4855228 in reference to an incident that occurred in the visiting room on March 31, 2018.  (Id.)  Officer Zuniga served plaintiff with a copy of the RVR on April 10, 2018.  (Id.)  Plaintiff was charged with disobeying an order in violation of California Code of Regulations, title 15, section 3005(b).  (Id. at 2-3.)

9. Disputed:  Defendants contend that rules violation report no. 4855228 was classified as serious pursuant to California Code of Regulation, title 15, section 3315(a).  (Id. at 3.)  Plaintiff contends that the RVR was incorrectly classified as serious.  (ECF No. 99-1 at 2.)

10.  Undisputed:  On April 23, 2018, defendant Wise served as Senior Hearing Officer presiding over a hearing on RVR no. 4855228.  (ECF No. 90-3 at 3.)

11.  Disputed:  Defendants contend that plaintiff was given an opportunity to present documentary evidence, call witnesses and cross-examine the officer who issued the rules violation report.  (Id.)  Plaintiff contends that defendant Wise violated his right to call witnesses and present documentary evidence.  (ECF No. 99-1 at 2.)

12.  Undisputed:  Before the hearing, defendant Wise reviewed the evidence plaintiff proposed to present during the hearing.  (ECF No. 90-3 at 3.)  Inmates have a right under CDCR evidence to present documentary evidence and witness testimony at disciplinary hearings; however the right is not unrestricted, and the hearing officer may deny a request to present documentary evidence or witness testimony when the hearing officer determines it is irrelevant to the proceedings.  (Id.)  The hearing officer is required to screen all proposed witness questions to ensure they are relevant to the violation charged.  (Id.)

13.  Undisputed:  Plaintiff proposed to ask questions of Officer Airey, who issued the RVR, as well as another inmate, inmate Maxwell.  (Id.)  Plaintiff also proposed to present a written declaration from a non-inmate witness, Beverly Daria.  (Id.)  In addition, plaintiff requested surveillance footage of the visiting room from March 31, 2018.  (Id.)

14.  Disputed:  Defendants contend that at plaintiff's request, defendant Wise attempted to locate any surveillance footage by making a telephone call to the lieutenant assigned to visiting.  (Id.)  Plaintiff was present when defendant Wise made the phone call.  (Id.)  No footage was available.  (Id.)  Plaintiff disputes that defendant Wise made a phone call in an attempt to locate the footage.  (ECF No. 99-1 at 3.)  Plaintiff contends that defendant Wise pretended to call the lieutenant assigned to visiting.  (Id.)

15.  Disputed:  Defendants contend that defendant Wise made individualized determinations regarding each of plaintiff's proposed witness questions and the proposed defendants.  (ECF No. 90-3 at 3.)  The disciplinary hearing results reflect

7

each of defendant Wise's determinations regarding the proposed evidence.  (Id. at 3-4.)  Plaintiff argues that the only determinations defendant Wise made were to violate plaintiff's constitutional rights.  (ECF No. 99-1 at 3.)

16. Undisputed:  Plaintiff's proposed questions to inmate Maxwell were related to the following topics:  whether there were individuals in the visiting room who were sitting in chairs with no table, whether there were empty tables at the relevant time, whether plaintiff's seating arrangement affected inmate Maxwell's visit, how many stacks of chairs were against the wall, whether visitors were permitted to get chairs without the assistance of staff, whether inmate Maxwell believed that there was a valid reason for the termination of plaintiff's visit, and whether inmate Maxwell had previously seen inmates handcuffed in the visiting room.  (ECF No. 90-3 at 4.)

17. Disputed:  Defendants contends that defendant Wise denied plaintiff's request to ask the proposed questions of inmate Maxwell at the disciplinary hearing because they were irrelevant to whether plaintiff disobeyed an order.  (Id.)  Plaintiff argues that his questions of inmate Maxwell were relevant to showing that Officer Airey's order was unlawful, unauthorized and absurd.  (ECF No. 99-1 at 3-4.)

18. Disputed:  Defendants contend that plaintiff's proposed exhibit, the declaration of Beverly M. Daria, was purportedly authored and signed by another inmate's mother who witnessed the events on March 31, 2018.  (ECF No. 90-3 at 4.)  This individual was not identified in the RVR and was not seated at plaintiff's visiting table at the time of the incident.  (Id.)  The declaration does not provide any relevant information.  (Id.)  Plaintiff contends that Daria's testimony was relevant to whether he disobeyed an order.  (ECF No. 99-1 at 4.)

19. Undisputed:  Defendant Wise denied plaintiff's request to admit the declaration of Beverly M. Daria as evidence at the disciplinary hearing.  (ECF No. 90-3 at 4.)

20. Disputed:  Defendants contend that plaintiff was permitted to cross-examine Officer Airey at the hearing regarding the order plaintiff allegedly violated.  (Id.)  Plaintiff contends that defendant Wise improperly denied his request to ask Officer Airey

8

questions 4, 5, 6 and 8.  (ECF No. 99-1 at 4.)

21. Undisputed:  Defendant Wise screened out plaintiff's fourth and fifth proposed
    questions to Officer Airey.  (ECF No. 90-3 at 4.)  Plaintiff's proposed fourth question
    to Airey requested that Airey identify a section and subsection of the California Code
    of Regulations requiring plaintiff to move to a different table.  (<u>Id.</u>)  Plaintiff's
    proposed fifth question to Airey was, "Did inmate Witkin at any point tell you to stop
    harassing him and his visitors?"  (<u>Id.</u>)

22. Undisputed:  Defendant Witkin screened out plaintiff's sixth and eighth questions to
    Officer Airey because they were already answered in the body of the RVR Officer
    Airey issued to plaintiff.  (<u>Id.</u> at 5.)  They were also duplicative of plaintiff's proposed
    first question to Officer Airey, which plaintiff was permitted to ask during the hearing.
    (<u>Id.</u>)  Plaintiff's sixth proposed question of Officer Airey asked, "Does your report
    confirm that inmate Witkin obeyed every lawful and comprehensible order you gave?"
    (<u>Id.</u>)  Plaintiff's proposed eighth question of Officer Airey asked, "What lawful order
    of yours was not obeyed by inmate Witkin to leave the visiting floor?"  (<u>Id.</u>)

23. Undisputed:  Following the hearing, defendant Wise found plaintiff guilty of the
    alleged offense.  (<u>Id.</u>)  Defendant Wise assessed losses of daytime yard privileges and
    visiting privileges for a period of ninety days.  (<u>Id.</u>)  Plaintiff was provided with a
    copy of the disciplinary hearing results.  (<u>Id.</u>)  Plaintiff was also provided with a loss
    of privileges worksheet.  (<u>Id.</u>)

24. Undisputed:  Despite the temporary loss of privileges associated with the disciplinary
    action, plaintiff remained assigned to Privilege Group A1A.  (<u>Id.</u>)

25. Disputed:  Defendants contend that during the relevant time period, the Facility C yard
    was generally open for use for nine hours per day, from approximately 8:30 a.m. to 12
    p.m., 12:30 p.m. to 4:00 p.m., and 7:00 p.m. to 9:00 p.m.  (<u>Id.</u>)  This schedule as
    modified on some occasions to accommodate facility operations or to address security
    concerns.  (<u>Id.</u>)  Plaintiff disputes defendants' claims regarding when the yard was
    open.  Plaintiff contends that the yard book shows that the yard always closed at 2050,

i.e., 8:30 p.m. (ECF No. 99-1 at 4.)  Plaintiff contends that the yard often opened at

1910, 1920 and 1925, but almost never at all at 1900, i.e., 7:00 p.m. (<u>Id.</u>)

26. Disputed:  Defendants contend that plaintiff's disciplinary imposition restricted

plaintiff's access to the yard during daytime hours. (ECF No. 90-3 at 5.)  Thus, during

the ninety-days disciplinary period, plaintiff would have been permitted to access the

yard during the evening (7:00 p.m. to 9:00 p.m.), subject to his work schedule. (ECF

No. 90-3 at 5.)  During the relevant time period, plaintiff worked as a building porter

from 2:00 p.m. to 9:00 p.m. Monday through Friday. (<u>Id.</u>)  Therefore, plaintiff would

have been able to access the yard from 7:00 p.m. to 9:00 p.m. on Saturdays and

Sundays. (<u>Id.</u>)  Plaintiff disputes defendants claim that the yard was open from 7:00 to

9:00 p.m. (ECF No. 99-1 at 4.)  Plaintiff contends that it is undisputed that he was

offered, on average, 2 hours and 16 minutes of outdoor exercise per week during the

90 days disciplinary period. (<u>Id.</u>)

27. Undisputed:  Building porters perform a variety of duties that involve physical

movement. (ECF No. 90-3 at 5.)  For example, porters are tasked with sweeping and

mopping the floors of the tiers and the day room. (<u>Id.</u>)  Porters also clean the shower

areas and wipe off equipment in the day room, including the phones and televisions.

(<u>Id.</u> at 5-6.)  Porters also empty trash receptacles and, on some occasions, clean the

staff offices in the housing unit. (<u>Id.</u> at 6.)  When meals are served in the housing unit,

porters assist with passing out meal trays and collecting empty meal trays to be placed

back on a cart. (<u>Id.</u>)

28. Undisputed:  Because plaintiff maintained his assignment to Privilege Group A1A,

plaintiff's privileges with respect to canteen and personal property packages,

telephone access, and access to other recreation and entertainment activities remained

the same during the disciplinary period. (<u>Id.</u>)

29. Disputed:  Defendants contend that after the hearing, plaintiff sent defendant Wise a

CDCR Form 22 in which plaintiff expressed dissatisfaction with the results of the

hearing on April 23, 2018, including the loss of daytime yard privileges. (<u>Id.</u>)

Defendant Wise replied to plaintiff using the CDCR Form 22 on May 9, 2018, and advised plaintiff to use the formal inmate-appeals process. (Id.) Plaintiff disputes defendants' undisputed fact no. 29. (ECF No. 99-1 at 5.) Plaintiff claims that on May 5, 2018, he and defendant Wise had a face-to-face conversation. (Id.)

30. Undisputed: Inmates in Level II Privilege Group A1A who are not subject to a disciplinary imposition are generally permitted to use the yard time when it is offered, subject to their work assignment schedule and/or other required programming or institutional security needs; however, inmates may choose not to engage in outdoor exercise. (ECF No. 90-3 at 6.)

31. Disputed: Defendants contend that during non-working hours throughout the disciplinary period, plaintiff was permitted to walk about the facility, use the showers, use the phone and access the day room for watching TV or other activities, such as playing chess. (Id.) In his response to defendants' undisputed fact no. 31, plaintiff contends that his ability to use showers, etc. is not relevant to whether he was allowed outdoor exercise. (ECF No. 99-1 at 5.) Plaintiff contends that he was only permitted to "walk about the facility" on Saturday and Sunday evenings when the yard was open. (Id.)

32. Disputed: Defendants contend that during the disciplinary period, plaintiff used the yard during one or two of the evening sessions offered to him each week. (ECF No. 90-3 at 6.) Plaintiff contends that defendants misconstrued his deposition testimony. (ECF No. 99-1 at 5.)

33. Undisputed: Plaintiff's daytime yard privileges were reinstated on July 22, 2018 after ninety days. (ECF No. 90-3 at 6.)

34. Undisputed: The only government claim plaintiff has submitted to the Government Claims Program alleging negligence, denial of adequate outdoor exercise or violations of procedural due process rights by defendants is Claim No. 18009022. (Id.)

35. Undisputed: Plaintiff signed his government claim form on October 2, 2018 and the Government Claims Program received plaintiff's government claim form on October

11

1   5, 2018.  (Id. at 7.)

2   36. Undisputed:  The Government Claims Program rejected plaintiff's government claim

3        on October 25, 2018, and the rejection letter was deposited in the mail on the same

4        day.  (Id.)

5   37. Undisputed:  In his government claim, plaintiff disputed an RVR issued on May 7,

6        2018, and a bunk search that purportedly occurred on that day.  The claim also alleged

7         that defendant Wise violated plaintiff's due process rights, without further

8        information.  The government claim does not discuss any alleged injuries caused by

9        the restrictions on plaintiff's outdoor exercise or negligence committed by defendants.

10       (Id.)

11     B.  Due Process Claim Against Defendant Wise

12     *Legal Standard*

13        A prisoner is entitled to certain due process protections when he is charged with a

14   disciplinary violation.  Serrano v. Francis, 345 F.3d 1071, 1077 (9th Cir. 2003) (citing Wolff v.

15   McDonnell, 418 U.S. 539, 564-571 (1974)).  "Such protections include the rights to call

16   witnesses, to present documentary evidence and to have a written statement by the fact-finder as

17   to the evidence relied upon and the reasons for the disciplinary action taken."  Id. at 1077-78.

18        Prison officials may, however, disallow evidence on the ground it is irrelevant or

19   unnecessary or because doing so would present hazards under the circumstances of the case.

20   Wolff, 418 U.S. at 566.

21     *Background/Clarification of Due Process Claim*

22        To put plaintiff's due process claim in context, the undersigned sets forth herein the

23   circumstances of plaintiff's offense as described by Officer Airey in the RVR:

24              On March 31, 2018 at approximately 1130 hours while performing
              my duties as the Level II visiting floor Officer I was approached by
25              two visitors who had high table passes and Doctors notes stating that
              they needed to be seated at a high table.  I identified the ADA
26              (Americans with Disability Act) table area and observed Inmate
              Witkin (F08703) who was positively identified by his issued CDCR
27              Identification Card sitting with his visitors at a ADA approved table.
              I approached Witkin and his guest and asked if anyone was ADA,
28              and if not I needed the sitting area for people who were ADA

                                        12

approved. Inmate Witkin acknowledged he was not ADA by stating, "No, why." I informed inmate Witkin that the table he was sitting at was a ADA approved table, which are clearly marked "ADA ONLY" on all the high tables in the area. I again informed inmate Witkin that if no one in his party was ADA that they would have to find seating in the general seating area. Inmate Witkin proceeded to tell me that he was ADA. I conducted a review of SOMS in order to check the status of inmate Witkin's claim. I returned to the table and informed inmate Witkin that he is not ADA and that he would have to move. Inmate Witkin became upset and told his guests to give me the table. Inmate Witkin proceeded to push the table out into the walk isle area and retain all of the chairs in a small circle. I informed inmate Witkin that the chairs belonged to the table and that he and his guest would have to move to the general seating area. Inmate Witkin refused and stated that I need to show him where it says the chairs belong to the table in writing. I informed inmate Witkin again that he was not ADA and that he cannot make up his own seating arrangements, as there was seating for his group in the general visiting area. I informed Witkin that his refusal to follow my orders of moving to an area not marked ADA would result in his visit being terminated for the day. Inmate Witkin continued to ignore my orders and continued to talk over me and would not move. I went to the podium and completed the Warning/Termination notice (CDCR Form 887-B) and proceeded to give inmate Witkin his copy notifying him of terminating his visit.

I told inmate Witkin that due to his refusal to obey a direct order that his visitation was terminated for his actions and not his guests. I informed inmate Witkin that his guests would have the opportunity to visit him the following day. Inmate Witkin continued to argue with me and told me that I couldn't terminate his visit because I didn't give him a verbal warning. I told inmate Witkin that I did give him a warning but he chose not to listen and now his visit was terminated. Inmate Witkin continued to be unreceptive to my counseling and said that he was refusing to leave and that I couldn't make him go. I informed inmate Witkin that if he refused to go that I would place him in handcuffs and escort him out of the visiting room. Once again inmate Witkin stated that he wasn't leaving. I ordered inmate Witkin to stand up and "cuff up" for failure to comply with a direct order. Inmate Witkin stood up and complied with my orders and placed him in handcuffs escorting him out to the level II rear strip area. As I escorted inmate Witkin to the rear strip door he tried to intimidate me by asking if I know what was in his words were "AN AMERICAN GANGSTER." I told inmate Witkin that I didn't care. Inmate Witkin then stated, "WELL YOUR ABOUT TO BECAUSE I AM ONE." I was not threatened by inmate Witkin's attempts to escalate the situation and placed him in the rear strip room. Lt. J. Rubalcaba arrived to speak with inmate Witkin and continued to be unreceptive to counseling and was informed that he would be receiving 115 rules violation report for "Disobeying a Direct Order." Witkin was given several verbal warnings about his seating status and was afforded the opportunity to have a visit the following day, but due to his continued disrespect and failure to comply with my orders he was informed that his visits would be suspended until adjudication of this RVR in accordance with Title 15

1

2

section 3176.4(a).  Inmate Witkin was processed out of the rear strip and was sent back to his housing unit and I returned to the visiting floor and resumed my duties.  This concludes my report.

3

(ECF No. 90-6 at 10.)

4

      The RVR indicates that plaintiff disobeyed two orders, i.e., the order to leave the ADA

5

table and the order to leave the visiting room when plaintiff's visit was terminated.  At the

6

disciplinary hearing, Officer Airey also testified that plaintiff disobeyed two orders:  1) the order

7

to leave the ADA table and use open low tables in the general visiting area by the glass windows

8

near the patio area; and 2) the order to leave the visiting room floor after plaintiff's visit was

9

terminated.  (ECF No. 90-6 at 15.)

10

      The section of the Disciplinary Hearing Results report discussing defendant Wise's

11

decision does not clearly state that he found plaintiff guilty of disobeying both of Officer Airey's

12

orders.  (Id. at 16-18.)  In his declaration submitted in support of the summary judgment motion,

13

defendant Wise also does not address whether he found plaintiff guilty of disobeying both of

14

Officer Airey's orders. (Id. at 1-8.)  However, because the Disciplinary Hearing Results report

15

indicates that defendant Wise relied on Officer Airey's RVR in finding plaintiff guilty, it appears

16

that defendant Wise found plaintiff guilty of disobeying both orders.  (See ECF No. 90-6 at 16.)

17

      In the second amended complaint, plaintiff appears to challenge only his ability to present

18

evidence in defense of the charge that he disobeyed Officer Airey's first order.  Plaintiff does not

19

dispute the validity of Officer Airey's second order and nor does not dispute his failure to obey

20

the second order.  In his cross-motion for summary judgment, plaintiff also does not argue that

21

the alleged  due process violations concerned his ability to present a defense to the charge of

22

disobeying Officer Airey's second order.  Accordingly, the undersigned herein considers plaintiff

23

due process claim only in connection with Officer Airey's first order.[2]

24

  [2] Whether defendant Wise found plaintiff guilty of disobeying one or two orders may have made a difference in the punishment he imposed.  In his declaration, defendant Wise states that there

25

may be an imposition of discipline of up to 90 days loss of privileges for an inmate found guilty of a serious rules violation.  (ECF No. 90-6 at 6.)  Defendant Wise states, "Due to the severity of

26

the offense and the fact that it occurred in the presence of other inmates and members of the public, I assessed losses of daytime yard privileges and visiting privileges for a period of 90

27

days." (Id.)  If plaintiff was found guilty of disobeying only one order, it is possible that

28

defendant Wise may have imposed less punishment.

*Questions Addressed to Inmate Maxwell*

Defendants argue that defendant Wise properly disallowed plaintiff's questions to inmate Maxwell because they were not relevant to determining whether plaintiff failed to obey an order. As discussed above, the parties do not dispute that plaintiff's proposed questions to inmate Maxwell were related to the following topics:  whether there were individuals in the visiting room who were sitting in chairs with no table, whether there were empty tables at the relevant time, whether plaintiff's seating arrangement affected inmate Maxwell's visit, how many stacks of chairs were against the wall, whether visitors were permitted to get chairs without the assistance of staff, whether inmate Maxwell believed that there was a valid reason for the termination of plaintiff's visit, and whether inmate Maxwell had previously seen inmates handcuffed in the visiting room.

In his declaration submitted in support of defendants' motion, defendant Wise states that he denied plaintiff's request to ask these questions of inmate Maxwell because they were not relevant to whether plaintiff disobeyed an order.  (ECF No. 90-6 at 5.)

In his opposition, plaintiff argues that inmate Maxwell's testimony was relevant to his defense that Officer Airey's order was unlawful.  (ECF No. 99 at 20.)  Plaintiff argues that there are no areas or chairs in the visiting room marked ADA or "not ADA."  (Id. at 19.)  Plaintiff suggests that he could not comply with the order to move to a "not-ADA" section of the visiting room because there was no section with this designation.  (Id.)  Plaintiff suggests that the only order he could comply with was the order to surrender the ADA table, which he did.  (Id.)

After reviewing the record, it appears that plaintiff is correct that there are tables in the visiting room marked ADA, but no specific areas or chairs marked ADA or "not ADA."  In response to special interrogatory no. 16, defendant Wise stated, "It is visiting room policy that tables designated for ADA inmates and visitors be reserved for inmates and visitors in need of ADA accommodations.  Plaintiff and his visitors did not require ADA accommodations."  (ECF No. 94-3 at 101.)

However, the undersigned finds (as argued by defendants in the opposition) that even if there were no areas or chairs in the visiting room marked ADA or "not ADA," any reasonable

1  person would have understood Officer Airey's first order as an order to vacate the ADA table and

2  its chairs and to move to a table that was not marked ADA.  Plaintiff's claim that he was unable

3  to comply with Officer Airey's order because the visiting room did not have areas or chairs

4  marked ADA or non-ADA is without merit.

5           Plaintiff also argues that Officer Airey's order to give up the chairs was illegal because

6  there were many chairs stacked against the wall.  This argument is without merit.  Even if there

7  were many chairs stacked against the wall, plaintiff was still required to obey Officer Airey's

8  order to leave the chairs and move to a table not marked ADA.  <u>See</u> Cal. Code Regs. title 15,

9  § 3005(b) (inmates must promptly and courteously obey written and verbal orders); <u>Lopez v.</u>

10 <u>Galaza</u>, 2006 WL 3147686, at *11 (E.D. Cal. Nov. 1, 2006) (Section 3005(b) contains no

11 exception to the requirement that inmates promptly and courteously obey written and verbal

12 orders from staff); <u>Lewis v. Downey</u>, 581 F.3d 467, 476 (7th Cir. 2009) (quoting <u>Soto v. Dickey</u>,

13 744 F.2d 1260, 1267 (7th Cir. 1984) ("Orders given must be obeyed.  Inmates cannot be

14 permitted to decide which orders they will obey, and when they will obey them.... Inmates are and

15 must be required to obey orders.  When an inmate refuse[s] to obey a proper order, he is

16 attempting to assert his authority over a portion of the institution and its officials.  Such refusal

17 and denial of authority places the staff and other inmates in danger.").

18          As discussed above, the proposed questions to inmate Maxwell did not disprove that

19 plaintiff disobeyed Officer Airey's first order.  The proposed questions to inmate Maxwell went

20 to the validity of Officer Airey's first order, which was not a valid defense.  Accordingly, the

21 undersigned finds that defendant Wise correctly found that the proposed questions to inmate

22 Maxwell were not relevant and the exclusion of these questions did not violate plaintiff's due

23 process rights.[3]

24 ////

25 ////

26 _____

27 [3]  Had plaintiff's due process claim included Officer Airey's second order, the undersigned would
find that the questions to inmate Maxwell were not relevant to this charge.  As discussed above,
plaintiff does not dispute that he disobeyed the second order.  In addition, the questions to inmate

28 Maxwell do not disprove that he disobeyed the second order.

1

*Daria Declaration*

2    Defendants argue that defendant Wise properly denied plaintiff's request to present the

3    declaration of Beverly M. Daria because the declaration presented no relevant information.

4    Although plaintiff does not clearly raise a claim regarding the Daria declaration, the undesigned

5    addresses this argument raised in defendants' summary judgment motion herein.

6    In his declaration, defendant Wise states that plaintiff's proposed exhibit, the declaration

7    of Beverly M. Daria, was purportedly authored and signed by a non-inmate witness to the events

8    on March 31, 2018.  (ECF No. 90-6 at 5.)  Defendant Wise states that Beverly M. Daria was not

9    identified in the RVR and was not seated at plaintiff's visiting table at the time of the incident.

10   (Id.)  Defendant Wise also states that the information in the declaration was not relevant to

11   whether plaintiff disobeyed an order.  (Id.)  For these reasons, defendant Wise denied plaintiff's

12   request to admit the declaration as evidence at the hearing.  (Id.)

13   Plaintiff argues that the Daria declaration was relevant to his defense that he did not

14   disobey any lawful orders.  (ECF No. 99 at 20.)  In support of this argument, plaintiff cites the

15   Daria declaration which states,

16         The facts stated herein are true of my own personal knowledge:

17         1.  I was in the SOL Level II visiting room on March 31, 2018.
18             From where I was seated I could see inmate Witkin (F08703)
                visiting with his family members.

19         2.  A Correctional Officer named Airey kept going to the table
20             where Inmate Witkin was visiting with his family.

21         3.  From my vantage point it appeared that Airey was harassing
               Witkin and his family.  He seemed bent on terminating their
22             visit.

23         4.  Every time Airey told Witkin and his family to do something
               they did it, but he kept coming back to their family's table and
               making up other things for them to do.  It was very
24             unprofessional and uncalled for.

25         5.  Eventually Airey told Witkin to stand up and handcuffed him.
               As soon as Witkin was handcuffed Airey tried unsuccessfully to
26             manhandle Witkin.

27         6.  It was very disturbing, offensive and inappropriate to see an
               inmate handcuffed, not only in the visiting area, but in the
28             children's area especially.  Exhibiting that negativity and abuse

17

of authority in front of those small children was degrading and distressing.

7. C/O Airey's conduct was a discredit to CDCR and case SOL staff in a very unprofessional and unreasonable light.

8. If something like this was every done at my family's visit I would not only file an appeal with the Warden, I would contact the California Legislature in regards to the extreme abuses of discretion being perpetrated in the People's institutions.

(Id.)

The Daria declaration is purportedly signed by Beverly Daria, under penalty of perjury, and contains her telephone number. (Id.)

In her declaration, Ms. Daria does not describe the "things" Officer Airey kept "making up" for plaintiff and his family to do. Based on the vague and conclusory statements in this declaration, the undersigned finds that the Daria declaration did not disprove that plaintiff disobeyed Officer Airey's order. In addition, plaintiff does not dispute that he failed to obey the order to give up the chairs and move to the general seating area. For these reasons, the undersigned finds that defendant Wise correctly excluded this declaration as not relevant to whether plaintiff disobeyed Officer Airey's first order. Accordingly, the exclusion of this declaration did not violate plaintiff's due process rights.[4]

*Questions Addressed to Officer Airey*

Defendants argue that defendant Wise properly screened out plaintiff's fourth, fifth, sixth and eighth questions to Officer Airey. In support of this argument, defendants refer to defendant Wise's declaration.

Defendant Wise states that plaintiff was permitted to cross-examine Officer Airey at the disciplinary hearing. (ECF No. 90-6 at 5.) Plaintiff's fourth question requested Officer Airey to identify a section and subsection of Title 15 requiring him to move to a different table. (Id. at 15.) Plaintiff's fifth question to Officer Airey asked, "Did Inmate Witkin at any point tell you to

---

[4] Had plaintiff's due process claim included Officer Airey's second order, the undersigned would find that the Daria declaration was not relevant to this charge. As discussed above, plaintiff does not dispute that he disobeyed the second order. In addition, the Daria declaration does not disprove that he disobeyed the second order.

1   stop harassing him and his visitors?"  (Id.)  Defendant Wise found that questions fours and five

2   were not relevant to the inquiry of whether plaintiff disobeyed an order.  (Id.)

3       Defendant Wise screened out questions six and eight because they were already answered

4   in the body of the RVR.  (Id.)  They were also duplicative of plaintiff's first proposed question to

5   Officer Airey, which plaintiff was permitted to ask during the hearing.  (Id.)  Question six asked,

6   "Does your report confirm that Inmate Witkin obeyed every lawful and comprehensible order you

7   gave?"  (Id. at 15.)  Question eight asked, "What lawful order of ours was not obeyed by Inmate

8   Witkin to leave the visiting floor?"  (Id.)  Question one asked, "Which order did you give that

9   was not followed?"  (Id.)

10       In his opposition, plaintiff cites his deposition testimony where he testified that questions

11   4, 5, 6 and 8 went to the lawfulness of Officer Airey's orders.  (ECF No. 99-1 at 4.)

12       As discussed above, the law did not permit plaintiff to disobey Officer Airey's orders

13   because plaintiff thought they were unlawful.  In addition, plaintiff does not dispute that he

14   disobeyed Officer Airey's orders to give up the chairs and move to the general seating area.  For

15   these reasons, the undersigned finds that  defendant Wise correctly found that questions four and

16   five were not relevant to whether plaintiff disobeyed Officer Airey's orders.  The undersigned

17   also finds that defendant Wise properly screened out questions six and eight as duplicative of

18   question one and addressed in the body of the RVR.

19       For the reasons discussed above, the undersigned finds that the exclusion of questions 4,

20   5, 6 and 8 addressed to Officer Airey did not violate plaintiff's due process rights.[5]

21   *Video Evidence*

22       Defendants move for summary judgment as to plaintiff's claim that he was not allowed to

23   present the surveillance video from the visiting room on the grounds that the video could not be

24   located.  In his declaration, defendant Wise states that he attempted to locate the surveillance

25   footage plaintiff requested by making a telephone call to the lieutenant assigned to visiting.

26   _____

27   [5] Had plaintiff's due process claim included Officer Airey's second order, the undersigned would
    find that defendant Wise's decision to exclude these questions did not violate plaintiff's right to
    due process based on the same reasoning discussed above regarding the relevance of the
28   questions to Officer Airey's first order.

1   (ECF No. 90-6 at 5.)  Plaintiff was present when defendant Wise made this telephone call.  (Id.)

2   The lieutenant told defendant Wise that the footage was not available.  (Id.)

3        In his opposition, plaintiff argues that defendant Wise knew that the Investigative Services

4   Unit ("ISU") managed the storage of video surveillance recordings, rather than the lieutenant

5   assigned to visiting.  (ECF No. 99-1 at 3.)  In support of this argument, plaintiff cites defendant

6   Wise's response to interrogatory no. 14, set four.  (Id.)  Interrogatory no. 14 asked defendant

7   Wise to describe the procedures for the presentation and storage of video surveillance recordings

8   at SOL, including who is responsible for such procedures.  (ECF No. 82 at 28.)  Without waiving

9   objections, defendant Wise responded that the storage of video surveillance recordings is

10   managed by the ISU.  (Id.)  Plaintiff argues that during the disciplinary hearing, defendant Wise

11   "pretended" to call the Lieutenant assigned to visiting, knowing that the videos were actually

12   maintained by the ISU.  (ECF No. 99-1 at 3.)

13        In the reply, defendants argue that plaintiff provides no admissible evidence

14   demonstrating that the lieutenant assigned to visiting would not know whether the footage existed

15   or would be able to obtain it for use in plaintiff's disciplinary hearing.  (ECF No. 107 at 5, n.3.)

16   While this may be true, plaintiff has presented evidence demonstrating that the person defendant

17   Wise called to ask for the video footage, i.e., the lieutenant assigned to the visiting room, did not

18   maintain this video footage.  Plaintiff has also presented evidence that defendant Wise knew that

19   the footage was maintained by the ISU.  The undersigned finds that plaintiff has presented

20   sufficient evidence to create a dispute regarding whether the surveillance video was available and

21   whether defendant Wise made a good faith attempt to locate the surveillance video during the

22   disciplinary hearing.

23        Despite the dispute regarding the availability of the surveillance video, the undersigned

24   finds that plaintiff's inability to present the surveillance video as evidence at his disciplinary

25   hearing did not violate his due process rights.

26        Plaintiff has a due process right to present *relevant* documentary evidence.  Wolff, 418

27   U.S. at 567 (emphasis added).  As discussed above, plaintiff does not dispute that he disobeyed

28   Officer Airey's orders to leave the chairs and move to a table not marked ADA.  For this reason,

1   the surveillance video was not relevant to whether plaintiff disobeyed Officer Airey's orders. The

2   surveillance video would not disprove that plaintiff disobeyed Officer Airey's orders to give up

3   the chairs and move to a table not marked ADA.  Accordingly, defendant Wise's failure to

4   produce the surveillance video did not violate plaintiff's right to due process.[6]

5          *Some Evidence*

6          In his opposition, plaintiff argues that defendants failed to address whether sufficient

7   evidence supported defendant Wise's decision finding plaintiff guilty of the RVR.  (ECF No. 99

8   at 8-9.)  However, plaintiff's second amended complaint does not raise a due process claim

9   alleging that  his disciplinary conviction was not supported by sufficient evidence.  Plaintiff may

10  not raise a new claim in his opposition.  See Coleman v. Quaker Oats Co., 232 F.3d 1271, 1291-

11  93 (9th Cir. 2000); Ziptronix, Inc. v. Omnivision Technologies, Inc., 71 F.Supp.3d 1090, 1099

12  (N.D. Cal. Oct. 21, 2014) (a plaintiff cannot raise a claim for the first time in response to a motion

13  for summary judgment).  Accordingly, the undersigned need not address this argument further.

14         C.  Eighth Amendment Claims

15         *Legal Standard*

16         The Eighth Amendment's prohibition against cruel and unusual punishment protects

17  prisoners not only from inhumane method of punishment but also from inhumane methods of

18  confinement.  Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v.

19  Brennan, 511 U.S. 825, 847 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  To

20  maintain an Eighth Amendment claim, a prisoner must show that prison officials were

21  deliberately indifferent to a substantial risk of harm to his health or safety.  Farmer, 511 U.S. at

22  847.  This requires the prisoner to demonstrate (1) the existence of an objectively serious risk of

23  harm, and (2) that subjectively, prisoner officials knew of and disregarded that risk.  Farmer, 511

24  U.S. at 834, 847.

25  ////

26

---

27  [6] Had plaintiff's due process claim included Officer Airey's second order, the undersigned would
    find that the surveillance video was not relevant to this charge because plaintiff does not dispute
28  that he disobeyed the second order.

The deprivation of a single identifiable human need such as exercise may violate the Eighth Amendment.  Thomas v. Ponder, 611 F.3d 1144, 1151-52 (9th Cir. 2010).  The right to outdoor exercise is not absolute or indefeasible, Norwood v. Vance, 591 F.3d 1062, 1068 (9th Cir. 2010), but "ordinarily the lack of outside exercise for extended periods is a sufficiently serious deprivation" for Eighth Amendment purposes.  LeMaire v. Maass, 12 F.3d 1444, 1457 (9th Cir. 1993).

"'[T]he Constitution requires jail officials to provide outdoor recreation opportunities, or otherwise meaningful recreation, to prison inmates.'"  Norbert v. City and County of San Francisco, 10 F.4th 918, 931 (2021) (quoting Shorter v. Baca, 895 F.3d 1176, 1185 (9th Cir. 2018)).  Indoor recreational opportunities may satisfy constitutional standards.  Id. at 929-30.  For example, access to a dayroom designed for exercise may be adequate recreation.  Id. at 931.

In Norbert, the Ninth Circuit noted that there is no bright line to test to determine if and when inmates are entitled to outdoor exercise.  Id. at 933.  In Norbert, the Ninth Circuit considered the totality of circumstances in determining whether jail officials provided constitutionally adequate exercise time, including opportunities for indoor recreation, the length of time the inmate is held under the conditions, whether the inmate has contact with others, whether disciplinary measures impact the conditions, and whether the inmate has opportunities for training or rehabilitation programs.  Id. at 929-34.

*Clarification of Disputed and Undisputed Facts Regarding Eighth Amendment Claim*

At the outset, the undersigned observes that the parties dispute the number of hours per week plaintiff was permitted outdoor exercise during the disciplinary period.  Defendants contend that plaintiff had yard access 4 hours per week, i.e., when the yard was open from 7:00 to 9:00 p.m. on Saturday and Sunday evenings.  Plaintiff contends that he had yard access, on average, only 2 hours and 16 minutes per week on Saturday and Sunday evenings due to irregular yard hours.

The undersigned also addresses defendants' claim that during the disciplinary period, plaintiff used the yard during only one of the two sessions offered to him each week.  In support of this claim, defendants cite plaintiff's deposition testimony at pp. 66:23-67:7.  (ECF No. 90-3 at

6 (undisputed fact no. 32).)  After reviewing the pages from plaintiff's deposition cited by defendants, the undersigned does not find that plaintiff testified that he used the yard during one of the two sessions offered:

> Q:  Did you do anything to stay in shape during the disciplinary period?
>
> A:  Yeah.  I tried to workout on one of those weekend evenings when I was able to go to the yard.  I tried to do one workout every week, but I'm not into doing –I'm not into doing the same muscle groups on back to back days.  So I wasn't gonna repeat my workout Saturday and Sunday, but I tried to do a workout every weekend on those time that I was allowed to go to yard.

Plaintiff's deposition at pp. 66:23-25—67: 1-7.)

In the testimony above, plaintiff explained that he worked out on one weekend evening because he did not want to work out on "back to back" days.  Plaintiff did not testify that he did not go to the yard on the evening he did not work out.  Defendants claim that plaintiff testified that he did not use the yard every time it was available to him is incorrect.

The undersigned also addresses the activities available to plaintiff during the disciplinary period.  It is undisputed that during the disciplinary period, plaintiff was housed in an open dormitory with bunk-style quarters rather than in an enclosed cell.  It is undisputed that during the disciplinary period, plaintiff worked as a building porter from 2:00 to 9:00 p.m. Monday through Friday.[7]  It is undisputed that plaintiff's privileges with respect to canteen and personal property packages, telephone access, and access to other recreation and entertainment activities remained the same during the disciplinary period.  It is undisputed that during non-working hours during the disciplinary period, plaintiff was permitted to use the showers, use the phone and access the dayroom for watching TV or other activities such as playing chess.[8]

---

[7]  In undisputed fact no. 26, defendants state, in part, that during the disciplinary period, plaintiff worked as a porter from 2:00 p.m. to 9:00 p.m.  (ECF No. 90-3 at 5.)  While plaintiff disputes other statements in defendants' undisputed fact no. 26, plaintiff does not dispute that he worked as a porter during the times alleged.  (ECF No. 99-1 at 4-5.)

[8]  In undisputed fact no. 31, defendants state that during the disciplinary period, plaintiff was permitted to use showers, use the phone and access the day room for watching TV or other activities.  (ECF No. 90-3 at 6.)  In response to defendants' undisputed fact no. 31, plaintiff states that these activities are not relevant to whether he received constitutionally adequate exercise.

1    Although disputed by plaintiff, the undersigned also finds that plaintiff's RVR was

2    properly classified as serious.  In his declaration, defendant Wise states that the RVR was

3    classified as serious because the violation occurred in front of members of the public and other

4     inmates during visiting hours.  (ECF No. 90-6 at 4.)  Defendant Wise states that the classification

5    of the RVR as serious is justified by several subdivisions of California Code of Regulations, Title

6    15, § 3315, including but not limited to, subdivisions (a)(2)(B) [hazard to facility security];

7    (a)(2)(C) [disruption of facility operations]; (a)(2)(E) [attempt to cause hazard to facility security

8    or disrupt facility operations]; and (a)(3)(H) [act of disobedience or disrespect having the

9    potential for violence or mass disruption].  (Id.)

10    *Analysis*

11    Defendants argue that the amount of outdoor exercise plaintiff received during the

12    disciplinary period did not violate the objective component of the Eighth Amendment.

13    The undersigned first addresses the arguments raised in plaintiff's opposition.

14    Plaintiff argues that he suffered medical injury as a result of inadequate outdoor exercise

15    during the disciplinary period.  (ECF No. 99 at 12.)   Plaintiff cites his second amended complaint

16    where he alleges that he suffered back and neck pain, stiffness, soreness, muscle atrophy, energy

17    loss, shortness of breath, headaches, lethargy and loss of muscle range, humiliation, degradation,

18    emotional distress, mental distress and depression due to inadequate exercise.  (ECF No. 49 at

19    10.)

20    The determination of the medical causes of plaintiff's symptoms described in the second

21    amended  complaint involve matters that are scientific, technical or require specialized

22    knowledge.  Accordingly, the court cannot consider plaintiff's opinion as a lay witness that the

23    symptoms described above were caused due to inadequate exercise.  See Fed. R. Evid. P. 701.

24    In support of his claim that he suffered injuries due to inadequate exercise, plaintiff also

25    cites medical records attached to his opposition as exhibit B.  On June 19, 2018, plaintiff

26

27    (ECF No. 99-1 at 5.)  However, plaintiff does not dispute that he was permitted to engage in the
      activities described in defendants' undisputed fact no. 31.  Accordingly, the undersigned finds

28    these facts undisputed.

24

1   complained of joint pain.  (ECF No. 99-2 at 5.)  The medical record describes the "mechanism of

2   injury" as, "I lost privileges in April and the lack of my favorite activity is causing back pain,

3   neck stiffness and headaches and would like some motrin renewed."  (Id.)  The report by Nurse

4   Kromann states no follow-up required, no protocol meds given and plaintiff encouraged to drink

5   2 liters of water a day and submit a 7362 as needed.  (Id.)  The report also described plaintiff's

6   mode of disposition as "ambulatory."  (Id.)  An entry in the records by Nurse Kromann also

7   states, "Pain Present:  No actual or suspected pain."  (Id. at 8.)  The report also states that plaintiff

8   reported, "still taking motrin as needed for pain."  (Id.)

9        Also attached to the opposition as exhibit B is a medical record from May 30, 2018.  (Id.

10   at 6.)  In this record, plaintiff complained of back, neck and head pain.  (Id.)  Plaintiff was

11   prescribed "OTC Motrin."  (Id. at 7.)

12        Plaintiff also includes a record from July 9, 2020, where plaintiff reported, "I don't have

13   normal program yet and it feels like am weighing weight and like my whole body is ha[v]ing

14   muscle atrophy.  And my upper back was bur[n]ing a lot Sunday morning from somebody

15   accidentally elbowing me."  (Id. at 9.)

16        The medical records discussed above contain plaintiff's opinion that he suffered pain and

17   other symptoms due to inadequate exercise.  The records do not state that the nurse or other

18   medical provider found that plaintiff's pain and/or other symptoms were caused by inadequate

19   exercise.  The undersigned cannot consider plaintiff's opinion as a lay witness that the symptoms

20   described above were caused due to inadequate exercise.  See Fed. R. Evid. 701.  For these

21   reasons, the undersigned finds that the medical records attached to the opposition do not

22   demonstrate that plaintiff suffered pain and other physical symptoms due to inadequate outdoor

23   exercise during the disciplinary period.

24        In his opposition, plaintiff cites Zaiza v. Clark, 2021 WL 632607 (E.D. Cal. Feb. 18,

25   2021), in support of his Eighth Amendment claim.  In Zaiza, the court found that plaintiff stated a

26   potentially colorable Eighth Amendment claim for relief based on the allegation that plaintiff

27   received approximately two hours of out-of-cell exercise per week while he was on a modified

28   lockdown from September 28, 2018 through July 9, 2019.  2021 WL 632607, at *3, *10.  During

the modified lockdown, the plaintiff in <u>Zaiza</u> also alleged that he was subject to restrictions for work/education, attending self-help programming, restriction of canteen, dayroom telephone calls, visits, family visits, packages, and other restrictions.  <u>Id.</u> at *2.  The plaintiff was allowed one shower every third day.  <u>Id.</u>

The facts of <u>Zaiza</u> are different from the facts alleged by plaintiff in the instant action. The plaintiff in <u>Zaiza</u> suffered more restrictions than plaintiff in the instant action, including being on a modified lockdown.  In the instant action, during the disciplinary period, plaintiff lived in dorm-style housing, worked at his job, had dayroom access, etc.  For these reasons, the undersigned is not persuaded by plaintiff's citation to <u>Zaiza</u>.

In his opposition, plaintiff also cites <u>Lopez v. Smith</u>, 203 F.3d 1122 (9th Cir. 2000).  In <u>Lopez</u>, the plaintiff alleged that he was denied access to outdoor exercise during six-and-one-half weeks following an injury.  <u>Id.</u> at 1132.  The Ninth Circuit held that plaintiff's allegations met the objective component of an Eighth Amendment claim, citing <u>Allen v. Sakai</u>, 48 F.3d 1082, 1087-88 (9th Cir. 1994).  <u>Id.</u> at 1134.

In <u>Allen v. Sakai</u>, the plaintiff alleged that during a six-week period during his confinement in the Security Housing Unit ("SHU") he received only 45 minutes per week of outdoor exercise.  48 F.3d at 1086.  During this time, he was confined to his cell for almost twenty-four hours per day.  <u>Id.</u> at 1087.  The Ninth Circuit concluded that the plaintiff met the objective element of the Eighth Amendment analysis.  <u>Id.</u>

The undersigned is not persuaded by plaintiff's citation to <u>Lopez</u>.  The plaintiff in <u>Lopez</u> received no outdoor exercise based on an injury, whereas plaintiff in the instant action allegedly received 2 hours and 16 minutes of outdoor exercise per week based on a serious rules violation conviction. The undersigned also observes that the instant action is distinguishable from <u>Allen</u>. The plaintiff in <u>Allen</u> was confined to his cell for almost twenty-four hours per day and received only 45 minutes of outdoor exercise per week, whereas plaintiff in the instant action was not confined to his cell twenty-four hours per day and allegedly received 2 hours and 16 minutes of outdoor exercise per week.

////

In his opposition, plaintiff argues that in Spain v. Procunier, 600 F.2d 189 (9th Cir. 1979), the Ninth Circuit held that inmates are entitled to 5 hours of outdoor exercise per week.  (ECF No. 99 at 11.)  Plaintiff is incorrect.  In Spain, the Ninth Circuit affirmed the district court order directing defendants to provide plaintiffs with outdoor exercise, one hour per day, five days a week, unless inclement weather, unusual circumstances or disciplinary needs made that impossible.  Id. at 199.  In affirming the district court regarding exercise, the Ninth Circuit noted the district court's exhaustive examination of all the conditions to which the plaintiffs were subjected including continuous segregation, spending virtually 24 hours per day in their cells with only meager out-of-cell movements and corridor exercise, minimal contact with other people, etc.  Id.  The Ninth Circuit in Spain did not hold that the Constitution guarantees all inmates 5 hours of outdoor exercise per week.

In their summary judgment motion, defendants cite Pierce v. County of Orange, 526 F.3d 1190 (9th Cir. 2008).  In Pierce, a Fourteenth Amendment case involving pretrial detainees, the Ninth Circuit held that providing ninety minutes of exercise per week to inmates in administrative segregation who spent twenty-two hours or more in their cells was unconstitutional.  Id. at 1208, 1212.  In Pierce, the Ninth Circuit also observed that the County provided nothing more to justify the almost complete denial of exercise than a generalized reference of institutional security concerns.  Id. at 1212-13.  The Ninth Circuit "declined to 'hold that there is a specific minimum of weekly exercise that must be afforded to detainees who spend the bulk of the time inside their cells,' but ordered that the inmate must be permitted to exercise at least two times each week for at least two hours per week."  Id. at 1212-13.  The undersigned observes that the Ninth Circuit in Pierce did not specify whether the exercise was indoor or outdoor.

Defendants argue that plaintiff claims he received the same amount of exercise as the Ninth Circuit ordered in Pierce.

Assuming that plaintiff received 2 hours and 16 minutes of outdoor exercise per week during the disciplinary period, as alleged by plaintiff in the opposition, plaintiff received the same amount of outdoor exercise as the Ninth Circuit ordered in Pierce.  Plaintiff received the restriction on his daytime yard access as punishment for his conviction for a serious rule

1   violation.  Unlike the detainees in <u>Pierce</u>, plaintiff was not confined to his cell for twenty-two

2   hours or more during the disciplinary period.  During the disciplinary period, plaintiff lived in a

3   dorm setting rather than a cell, worked at his job, and had access to the dayroom, the phone and

4   showers.[9]  Considering the totality of the circumstances, the undersigned finds that plaintiff's

5   alleged access to outdoor exercise for two hours and 16 minutes per week during the 90 days

6   disciplinary period did not violate the Eighth Amendment.  Accordingly, defendants' motion for

7   summary judgment on these grounds should be granted.

8          Defendants also move for summary judgment on the subjective component of plaintiff's

9   Eighth Amendment claim.  Defendants argue that they did not act with deliberate indifference

10  because there was a penological justification for plaintiff's temporary loss of daytime yard

11  privileges.  The undersigned need not reach this argument because defendants are entitled to

12  summary judgment on the objective component of plaintiff's Eighth Amendment claim.

13         D.  <u>Qualified Immunity</u>

14         Defendants move for summary judgment on the grounds that they are entitled to qualified

15  immunity as to plaintiff's constitutional claims.

16         In <u>Saucier v. Katz</u>, 533 U.S. 194 (2001), the Supreme Court set forth a two-pronged test to

17  determine whether qualified immunity exists.  First, the court asks:  "Taken in the light most

18  favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated

19  a constitutional right?"  <u>Id.</u> at 201.  If "a violation could be made out on a favorable view of the

20  parties' submissions, the next, sequential step is to ask whether the right was clearly established."

21  <u>Id.</u>  To be "clearly established," "[t]he contours of the right must be sufficiently clear that a

22  reasonable official would understand that what he is doing violates that right."  <u>Id.</u> at 202 (internal

23  quotation marks and citation omitted).  Accordingly, for the purposes of the second prong, the

24  dispositive inquiry "is whether it would be clear to a reasonable officer that his conduct was

25  unlawful in the situation he confronted."  <u>Id.</u>  Courts have the discretion to decide which prong to

26

27  [9]  While the record contains no evidence demonstrating that the day room was designed for
    exercise, plaintiff's access to the day room is still relevant to the undersigned's determination of
28  plaintiff's Eighth Amendment claim.

1  address first, in light of the particular circumstances of each case.  See Pearson v. Callahan, 555

2  U.S. 223, 236 (2009).

3       Because the undersigned finds no violation of plaintiff's Eighth and Fourteenth

4  Amendment rights, the undersigned need not address qualified immunity any further.

5       E.  Plaintiff's State Law Claims

6       Plaintiff raises negligence claims based on the allegations alleged in support of his Eighth

7  Amendment and Fourteenth Amendment due process claims discussed above.  (ECF No. 49 at

8  11-12.)  Defendants move for summary judgment as to plaintiff's state law claims on three

9  grounds:  1) the claims are barred by the statute of limitations; 2) the claims were not adequately

10 raised in the state tort claim; and 3) the claims are not actionable.

11      In his opposition, plaintiff states that defendants are entitled to summary judgment as to

12 his state law claim based on inadequate outdoor exercise because he did not include this claim in

13 his state tort claim.  (ECF No. 99 at 7.)  Accordingly, the undersigned recommends that

14 defendants' be granted summary judgment as to this state law claim on these grounds.

15      The undersigned herein finds that plaintiff failed to adequately raise his state law claim

16 based on the alleged due process violations in his state tort claim.  For this reason, the

17 undersigned need not address defendants' arguments that this claim is not actionable and barred

18 by the statute of limitations.

19      *Legal Standard for Complying with California Government Claims Act*

20      "The Tort Claims Act requires that any civil complaint for money or damages first be

21 presented to and rejected by the pertinent public entity."  Munoz v. California, 33 Cal.App.4th

22 1767, 1776 (1995).  The purpose of this requirement is "to provide the public entity sufficient

23 information to enable it to adequately investigate claims and to settle them, if appropriate, without

24 the expense of litigation," City of San Jose v. Superior Court, 12 Cal.3d 447, 455 (1974)

25 (citations omitted), and "to confine potential governmental liability to rigidly delineated

26 circumstances: immunity is waived only if the various requirements of the Act are satisfied,"

27 Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal., 730 F.3d 1111, 1125 (9th

28 Cir. 2013).  Compliance with this "claim presentation requirement" constitutes an element of a

29

1  cause of action for damages against a public entity or official.  State v. Superior Court (Bodde),

2  32 Cal.4th 1234, 1244 (2004).  In the state courts, "failure to allege facts demonstrating or

3  excusing compliance with the claim presentation requirement subjects a claim against a public

4  entity to a demurrer for failure to state a cause of action."  Id. at 1239 (fn.omitted).

5       Federal courts likewise must require compliance with the California Government Claims

6  Act for pendant state law claims that seek damages against state public employees or entities.

7  Mangold v. California Public Utilities Commission, 67 F.3d 1470, 1477 (9th Cir.1995).  State tort

8  claims included in a federal action, filed pursuant to 42 U.S.C. § 1983, may proceed only if the

9  claims were first presented to the state in compliance with the claim presentation requirement.

10  Karim-Panahi v. Los Angeles Police Department, 839 F.2d 621, 627 9th Cir.1988).

11       *Substantive Requirements of Government Claims Act*

12       "'[A tort] claim served on a governmental entity must fairly describe what that entity is

13  alleged to have done.'"  Fleeman v. County of Kern, 2021 WL 5514498, at *2 (E.D. Cal. Nov. 24,

14  2021) (quoting Shoemaker v. Myers, 2 Cal.App.4th 1407, 1426 (1992)).

15       The written claim must include a "general description" of the alleged injury "so far as it

16  may be known at the time of presentation of the claim."  See Cal. Gov't Code §§ 910, 945.4.  It is

17  "not necessary that the claim comply with formal pleading standards" so long as it includes (1)

18  "the date, place and other circumstances of the occurrence or transaction which gave rise to the

19  claim," (2) a "general description" of the "injury, damage, or loss incurred," and (3) the "name or

20  names of the public employee or employees causing the injury," if known.  Blair v. Superior

21  Court, 218 Cal. App. 3d 221, 224 (1990).

22       In the relevant tort claim, i.e., Claim No. 18009022, plaintiff named the employees against

23  whom the suit was filed as defendant Wise, Sergeant Pierscinski, Correctional Officer

24  Broadstone, Officer Zuniga and Warden Neuschmid.  (ECF No. 90-4 at 29.)  Plaintiff described

25  the date of the incident as April 23, 2018 to May 7, 2018.  (Id.)  Plaintiff described the damage or

26  injury as, "Property damage to personal property, violation of First and Fourteenth Amendment

27  rights, retaliation, infliction of emotional distress, etc." (Id. at 30.)  Plaintiff described the

28  circumstances that led to his injuries as follows:

> At a disciplinary hearing complainant expressed to Wise that he would be exercising his 14th Amendment procedural due process rights. Wise called Pierscinski. Broadstone, and Zuniga into the [sic] as backup. They sat in on the remainder of the hearing at which Wise denied the procedural rights that were due. The defendants reached a meeting of the minds to retaliate for the attempted exercise of those rights which culminated May 7 when Zuniga drafted a false RVR against complainant, and Broadstone violently ransacked his personal belongings. Administrative defendants then sanctioned the illegal conduct on direct administrative appeal.

(Id.)

Claim No. 18009022 alleged that defendant Wise violated plaintiff's right to due process at the same disciplinary hearing challenged in the instant action. However, in his tort claim, plaintiff did not allege how defendant Wise allegedly violated his due process rights. "[A] claim filed in anticipation of litigation must set forth all the legal and factual bases that will be asserted in any subsequent lawsuit." Doe 1 v. City of Murrieta, 102 Cal.App.4th 899, 920 (2002), disapproved on other grounds by deVillers v. County of San Diego, 156 Cal.App.4th 238 (2007) and Brown v. USA Taekwondo, 276 Cal.Rptr.3d 434 (2021); Watson v. State of California, 21 Cal.App.4th 836, 845 (1993) (the claims statute can be satisfied only by a timely writing setting forth the factual basis of the purported liability of the public entity).

The undersigned finds that Claim No. 18009022 did not meet the requirements of the Tort Claim Act because it alleged *no facts* regarding how defendant Wise allegedly violated plaintiff's due process rights. For this reason, defendants should be granted summary judgment as to plaintiff's negligence claim against defendant Wise based on the alleged due process violations at the disciplinary hearing.

V.      Plaintiff's Summary Judgment Motion

        A.    Undisputed Facts

Plaintiff's summary judgment motion contains a statement of 105 undisputed facts. (ECF No. 94-2.) In the section of the findings and recommendations addressing the merits of plaintiff's summary judgment motion, the undersigned will address the disputed facts, where relevant.

> 1.    Undisputed:  Plaintiff, a prisoner in the custody of the CDCR, at all relevant times to this action was house at CSP-Sol. (ECF No. 107-3 at 2.)

31

2. Undisputed:  As a prisoner, plaintiff is "subject to the rules and regulations of the Secretary, and to the procedures established by the warden, superintendent, or regional parole administrator, responsible for the operation of that facility."  Cal. Code Regs. tit. 15, § 3001.  (Id.)

3. Disputed.  (Id.)

4. Undisputed:  Defendant Wise was employed by CDCR as a Correctional Lieutenant at all relevant times to this action.  (Id.)

5. Undisputed:  Defendant Wise's duty included "maintaining order and discipline in accordance with established procedures." (Id.)

6. Undisputed:  Defendant Wise's duty included "[d]irect supervision of …the maintenance of proper physical and sanitary conditions and [Wise] otherwise sees to the well-being of inmates.  (Id. at 3.)

7. Undisputed:  Defendant Wise's duties included being a member of the institutional disciplinary committee.  (Id.)

8. Undisputed:  Defendant Matteson was employed by CDCR as Chief Deputy Warden of SOL at all times relevant to this action. (Id.)

9. Undisputed:   Subject to the approval of the Secretary of Corrections and Rehabilitation wardens, superintendents and parole region administrators will establish such operational plans and procedures as are required by the Secretary for implementation of regulations and as may otherwise be required for their respective operations.  Such procedures will apply only to the inmates, parolees and personnel under the administrator. (Id.)

10. Disputed.  (Id.)

11. Disputed.  (Id.)

12. Disputed.  (Id. at 4.)

13. Disputed.  (Id. at 4-5.)

14. Disputed.  (Id. at 5.)

15. Undisputed:   In a subsequent administrative grievance, Associate Warden S. Jackura characterized Officer Airey's order as "a direct order to move to an area not marked ADA" in the first level response to appeal log number CSP-S-18-00862.  (Id. at 6.)

16. Disputed.  (Id.)

17. Disputed.  (Id. at 7.)

18. Disputed.  (Id. at 8.)

19. Undisputed:   CO Airey authored a document saying that plaintiff's visit was terminated and ordered plaintiff to be handcuffed. [10] (Id. at 9.)

20.  Undisputed:   Plaintiff complied by submitting to handcuffs. (Id.)

21. Undisputed:  Plaintiff was issued a RVR in connection with the events in the visiting room on March 31, 2018.  (Id. at 10.)

22.  Undisputed:  Defendant Wise presided over the hearing of the charges on April 23, 2018.  (Id.)

23. Undisputed:  Plaintiff requested to present the video surveillance recordings from the SOL visiting room in defense of the charges at the April 23 hearing.  (Id.)

24. Undisputed:   Plaintiff may present documentary evidence in defense or mitigation of charges.[11]  (Id.)

25. Undisputed:    According to defendant Wise, visiting was contacted regarding plaintiff's request and no video was available for this incident per visiting Lt. Rubalcaba on April 23, 2018.  (Id.)

26. Undisputed:  The ISU manages the storage of video surveillance recordings.  (Id.)

27. Undisputed:  In response to plaintiff's request for production of documents, defendant Wise stated that, after conducting a search, he could not locate the March 31, 2018 video footage. (Id.)

28. Disputed.  (Id.)

29. Undisputed:   Plaintiff requested to call inmate Maxwell as a witness at the disciplinary hearing.  (Id. at 11.)

30. Undisputed:    Defendant Wise determined that plaintiff's questions for inmate Maxwell were irrelevant.  (Id.)

31. Undisputed:    Inmates may request witnesses attend a disciplinary hearing and the requested witnesses shall be called

[10]   In undisputed fact no. 19, plaintiff contends that, "CO Airey authored a document saying that plaintiff's visit was terminated and ordered plaintiff to be handcuffed." (ECF No. 107-3 at 9.) Defendants state that they do not dispute plaintiff's undisputed fact no. 19, per Officer Airey's RVR.  (Id.)

[11]   In undisputed fact no. 24, plaintiff contends that he has a "procedural right" to present documentary evidence, whereas defendants cite Cal. Code Regs. tit. 15, § 3320(l) as the source of the authority for plaintiff to present documentary evidence.  (ECF No. 107-3 at 10.)

unless the hearing officer denies the request for one of the following reasons:  1) the appearance would endanger the witness; 20 the official determines that the witness has no relevant information; or 3) the witness is unavailable.  (Id.)

32. Undisputed:  Plaintiff explained to defendant Wise that his defense was based upon the regulation that he is only subject to orders authorized by law.  (Id.)

33. Undisputed:   In the evidence section of plaintiff's RVR, defendant Wise commented, "Per Title 15 General Visiting Section 3170(f) reasonable accommodation shall be afforded visitors and inmates with disabilities to facilitate their full participation in contact, non-contact, or family visiting as provided in these rules.  All ADA table are spray painted with lettering indicating ADA only on them.  Inmate Witkin was preventing the aforementioned by occupying the ADA table with his visitors when no ADA accommodation was needed and therefore required Officer to give a direct order to move from the ADA table which Inmate Wilkin did not comply.  (Id. at 11-12.)

34. Disputed.  (Id. at 12.)

35. Undisputed:  Defendant Wise deemed plaintiff's question no. 4 irrelevant.  (Id.)

36. Disputed.  (Id.)

37. Disputed.  (Id.)

38. Undisputed:  Defendant Wise denied the presentation of the declaration testimony Beverly M. Daria deeming that she did not have "any information relevant to the charge."  (Id.)

39. Disputed.  (Id. at 13.)

40. Undisputed:  Defendant Wise wrote by hand on the "Loss of Privileges" worksheet "loss of Day yard due to inmate work schedule."  (Id.)

41. Undisputed:  Defendant Wise did not assess loss of evening yard instead of day yard "[b]ecause plaintiff was scheduled to be working during evening yard hours five days per week, a disciplinary imposition of a loss of evening privileges would not have been proportionate to the severity of plaintiff's rules violation."  (Id.)

42. Undisputed:  The disciplinary disposition created by defendant Wise left plaintiff with evening yard on his days off , Saturday and Sunday.  (Id.)

43. Disputed.  (Id.)

44. Undisputed:  Plaintiff was not placed into Privilege Group C. (Id. at 14.)

34

45. Undisputed:   Plaintiff wrote a CDCR Form 22 stating that defendant Wise, "violated all his due process rights" and "issued illegal punishment." (Id. at 14.)

46. Undisputed:  In the form 22 plaintiff wrote that, "as a third watch worker, I cannot lose day yard as that would deprive me of all outdoor exercise in violation of the Eighth Amendment." (Id.)

47. Disputed.  (Id.)

48. Disputed.  (Id.)

49. Disputed.  (Id.)

50. Undisputed:  Plaintiff received his April 24 CDCR 22 form back from defendant Wise, which was signed by Wise on May 9, and stated "you are to address the issues above via inmate appeals process 602 as I informed you." (Id.)

51. Disputed.  (Id. at 15.)

52. Disputed.  (Id.)

53. Disputed.  (Id.)

54. Undisputed:  The Building 14 log book shows "the yard opening and closing times for the requested time frame for plaintiff's building." (Id.)

55. Disputed.  (Id. at 15-16.)

56. Disputed.  (Id. at 16.)

57. Undisputed:  Institutional Operations Plan (IOP) CSPS-L3-18-114 governs the minimum amount of outdoor exercise for SOL inmates placed into Privilege Group C as a result of the disciplinary process. (Id. at 16-17.)

58. Undisputed:  IOP CSPS-L3-19-114 applies to all SOL inmates and personnel. (Id. at 17.)

59. Undisputed:   Defendant Matteson reviewed and signed IOP CSPS-L3-18-114 which took effect on February of 2018. (Id.)

60. Undisputed:   Defendant Wise is "responsible for the daily adherence to the policies and procedures defined in [IOP CSPS-L3-18-114]." (Id.)

61. Undisputed:   "CCR, Title 15, § 3044 authorizes the following privileges for inmates assigned to Privilege Group C: …[o]ffered no less than ten hours of exercise in an outdoor or covered/enclosed setting each week.  Dayroom access shall not be counted towards the ten hours of exercise." (Id.)

62. Disputed.  (Id.)

63. Disputed.  (<u>Id.</u>)

64. Disputed.  (<u>Id.</u> at 18.)

65. Disputed.  (<u>Id.</u> at 18-19.)

66. Undisputed:   On April 4, 2018, plaintiff submitted an administrative appeal CSPS-18-862, which was received by the SOL appeals office April 5, 2018.  (<u>Id.</u> at 19.)

67. Undisputed:   In CSPS 18-862 plaintiff alleged "Staff misconduct" regarding the performance of CO Airey at his March 31, 2018 social visit.  Plaintiff requested disciplinary action against Airey and reimbursement of his "excessive distance" visitor's travel and lodging."  (<u>Id.</u>)

68. Disputed.  (<u>Id.</u>)

69. Undisputed:   Defendant Matteson had the responsibility to decide whether or not to process CSPS 18-862 as a staff complaint or a routine appeal.  (<u>Id.</u>)

70. Disputed.  (<u>Id.</u>)

71. Undisputed:  Defendant Matteson refused to process CSPS 18-862 as a staff complaint on April 6, 2018 and plaintiff's appeal was rejected.  (<u>Id.</u>)

72. Undisputed:   Plaintiff resubmitted CSPS-18-862 and it was again not processed as a staff complaint.  (<u>Id.</u> at 20.)

73. Undisputed:   Plaintiff resubmitted CSPS-18-862 on April 25, 2018.  (<u>Id.</u>)

74. Undisputed:  On April 27, 2013, CSPS-18-862 was rejected a third time.  (<u>Id.</u>)

75. Undisputed:  Plaintiff resubmitted CSPS-18-862 on June 2, 2018 with the "misconduct" allegations lined out.  On June 5 it was again rejected with a screening form stating that "[t]he Warden has already reviewed your 602 and has determined that this 602 will not be filed as a staff complaint.  The Warden has the final determination and that is not appealable.  You will need to make some clarifications for this 602 to be processed.  (<u>Id.</u>)

76. Undisputed:   Plaintiff resubmitted CSPS-18-862 on July 5, 2018, it was received by the SOL appeals office on July 5 and accepted and assigned for review on July 9, 2018.  (<u>Id.</u>)

77. Undisputed:  The First Level Response (FLR) characterized the issue presented as "[t]he ADA table was given back, but Officer Airey also requested the chairs.  The appellant claims to be harassed by visiting Officer Airey and states that his authority is limited to enforcing the rules and the appellant was willing to do whatever was in the Title 15.  (<u>Id.</u> at 21.)

78. Undisputed:  Officer Airey was interviewed in connection with the FLR.  (Id.)

79. Disputed:  (Id.)

80. Disputed.  (Id.)

81. Disputed.  (Id.)

82. Disputed.  (Id. at 22.)

83. Undisputed:  Plaintiff's appeal to the FLR in CSPS 18-862 was denied on July 28, 2018 the same day plaintiff was interviewed in connection with the appeal.  (Id.)

84. Undisputed:  Plaintiff appealed the CSPS 18-862 FLR to the Second Level of review (SLR) on September 11, 2018 and it was accepted for review and assigned on September 12.  (Id.)

85. Undisputed:  The Assigned reviewer of CSPS 18-852 at the SLR was defendant Matteson.  (Id.)

86. Undisputed:  In CSPS 18-862, plaintiff stated that "[t]he FLR is a discredit to the CDCR and the People of California.  The FLR is incapable of understanding the limited scope of staff authority.  CCR § 3001.  At no time in the history of this Nation have state officers been granted rule making authority, and that continues to be the case."  (Id.)

87. Undisputed:  Plaintiff stated in CSPS 18-862 SLR appeal that "[s]taff's ongoing refusal to review the surveillance video is prima facie evidence that they know of Airey's guilt and appellant's factual innocence.  It was also a violation of his 14th Amendment rights under Wolff v. McDonnell, 418 U.S. 539 (1974) to refuse to introduce the tape in the disciplinary context.  If your [sic] in the right why the cover-up (the same tape was used to convict numerous inmates)."  (Id.)

88. Undisputed:  Plaintiff stated in CSPS 18-362 SLR appeal that "[s]taff's reliance on DOM is unavailing.  The DOM does not purport to give C/O's rulemaking authority, nor could it.  The section cited by the FLR authorizes enforcement of 'laws …CDCR policies or regulations.'  In other words, a mere C/O only has the authority to order an inmate to do something required by properly promulgated legal authority."  (Id. at 23.)

89. Undisputed:  Defendant Matteson identified the issue presented in CSPS 18-862 as the "scope of staff authority citing CCR section 3001" and acknowledged plaintiff's allegation that "staff is refusing to review the surveillance video and is covering up the incident."  Matteson further stated that "[t]he appellant believes Officer Airey has no authority to make his own rules."  (Id.)

90. Undisputed:  In the "Discussion" section of the CSPS 18-862

SLR defendant Matteson stated that "[t]he appellant stated in his own words that he refused to relinquish the chairs for the ADA table by stating that Officer Airey did not need to claim the chairs appellant and visitors were using when a stack of chairs were unused and available in the area." (Id.)

91. Disputed.  (Id.)

92. Undisputed:  Defendant Matteson denied CSPS 18-862 at the SLR stating that "Officer Airey did not violate any policies in the handling of this matter." (Id. at 24.)

93. Undisputed:    CDCR adopted defendant Matteson's SLR decision, in which she was acting as the Warden, as the Third Level Response (TLR) which exhausted plaintiff's administrative remedies.  (Id.)

94. Undisputed:    On May 25, 2018 plaintiff submitted administrative appeal CSPS 18-1331 which was received by the SLR appeals office on May 29, 2018.  (Id.)

95. Undisputed:    In CSPS 18-1331 defendant Matteson was reviewing a set of issues stemming from a March 31, 2019 incident in the SOL visiting room, which she had initially been put on notice on April 6, 2018 by CSPS 13-862.  (Id.)

96. Undisputed:  In CSPS 18-1331, plaintiff alleged that he had been subjected to "U.S./California Constitutional Violations" as well as violations of 15 CC § 3001, 3320(1), and "Unlawful discipline/disciplinary hearing procedures" and "Illegal punishments" in connection with RVR 4855228.  (Id.)

97. Undisputed:  In CSPS 18-1331, plaintiff stated that defendant Wise was "intentionally denying [him] all outdoor exercise even after [plaintiff] explained to him that it was illegal." (Id.)

98. Undisputed:   At his disciplinary hearing, plaintiff sought to present witnesses and surveillance video.  (Id.)

99. Undisputed:    Defendant Wise determined that the video evidence was unavailable and decided to proceed without it. (Id.)

100.   Disputed.  (Id. at 25.)

101.   Undisputed:  Defendant Wise knew that the disciplinary disposition he created offered plaintiff a potential maximum of 3 hours and 40 minutes of weekly outdoor exercise.  (Id.)

102.   Disputed.  (Id.)

103.   Disputed.  (Id.)

104.   Disputed.  (Id. at 25-26.)

38

105.   Disputed.  (Id. at 26.)

B.   Plaintiff's Due Process Claims

In analyzing plaintiff's due process claim, the undersigned considers the legal standard for due process in disciplinary hearings set forth above in the section addressing defendants' summary judgment motion as to this claim.

Although plaintiff did not present a copy of the RVR or defendant Wise's Disciplinary Hearing Results report in support his summary judgment motion, plaintiff submitted several grievances describing the RVR and defendant Wise's report.  The descriptions in the grievances of the RVR and defendant Wise's report are consistent with the RVR and Disciplinary Hearing Results report submitted by defendants and discussed above.

In his summary judgment motion, plaintiff argues that Officer Airey's order to "give up your chairs" and "move to an area not marked ADA" was unlawful.[12]  (ECF No. 94-1 at 11-12.) As he did in his opposition to defendants' summary judgment motion, plaintiff contends that he could not comply with Officer Airey's order to move because there were no chairs or areas marked ADA or "not ADA" in the visiting room.  (Id. at 12.)

As discussed above, plaintiff's argument that he could not comply with Officer Airey's order to move to the general seating area because no area or chairs in the visiting room were designated ADA or "not ADA" is without merit.  A reasonable person would understand Officer Airey's order to be to move to a table not marked ADA.

Plaintiff argues, as he did in his opposition to defendants' summary judgment motion, that Officer Airey's order to give up the chairs was illegal because there were many chairs stacked against the wall.  (Id.)  The undersigned again finds that even if there were many chairs stacked against the wall, plaintiff was required to obey the order to leave the chairs and move to a table not marked ADA.  Cal. Code Regs. title 15, § 3005(b) (inmates must promptly and courteously obey written and verbal orders); Lopez v. Galaza, 2006 WL 3147686, at *11 (E.D. Cal. Nov. 1,

---

[12]  As discussed above, in his summary judgment motion plaintiff does not argue that defendant Wise violated his due process rights in connection with his ability to present evidence regarding his compliance with Officer Airey's second order.

2006) (Section 3005(b) contains no exception to the requirement that inmates promptly and courteously obey written and verbal orders from staff); Lewis v. Downey, 581 F.3d 467, 476 (7th Cir. 2009).

In his summary judgment motion, plaintiff argues that defendant Wise wrongly excluded his questions to inmate Maxwell and Officer Airey, the Daria declaration and the surveillance video. (Id. at 12-13.) Plaintiff argues that this evidence was relevant to his defense that he complied with Officer Airey's lawful order to give up the ADA table. (Id.) Plaintiff's arguments are based on the same evidence cited in his opposition to defendants' summary judgment motion. (Id.)

In the opposition, defendants argue that the excluded evidence was not relevant because it concerned plaintiff's defense that Officer Airey's first order was unlawful. (ECF No. 107 at 5-6.)

Plaintiff does not dispute that he disobeyed Officer Airey's orders to give up the chairs and move to a table that was not designated ADA. The excluded evidence did not disprove plaintiff's failure to comply with these orders. Therefore, defendant Wise properly excluded this evidence on the grounds that it was not relevant to whether plaintiff disobeyed Officer Airey's order. For these reasons, plaintiff's motion for summary judgment as to his due process claim against defendant Wise should be denied.

C.  Plaintiff's Eighth Amendment Claim

In analyzing plaintiff's summary judgment motion as to his Eighth Amendment claim, the undersigned considers the legal standard set forth above in the section addressing defendants' summary judgment motion as to this claim.

Plaintiff moves for summary judgment on the objective and subjective requirements of an Eighth Amendment claim. In support of his motion based on the subjective requirements, plaintiff argues that defendant Wise knew that he violated federal law when he imposed the limitations on plaintiff's access to the day yard following the disciplinary hearing. (ECF No. 94-1 at 11.) Plaintiff argues that defendant Matteson knew that he violated federal law when he upheld defendant Wise's decision limiting plaintiff's access to the day yard. (Id.)

////

1    The undersigned need not address plaintiff's arguments regarding whether defendants met

2  the subjective requirements for an Eighth Amendment claim because, for the reasons stated

3  herein, plaintiff is not entitled to summary judgment based on the objective requirements.

4    Plaintiff argues that defendants Wise and Matteson denied his constitutional right to

5  outdoor exercise by offering him an average of 2 hours and 16 minutes per week during the 90

6  days disciplinary period.  (ECF No. 94-1 at 6.)  Plaintiff's arguments and evidence in support of

7  this claim are largely the same as those submitted in support of his opposition to defendants'

8  summary judgment motion.

9    In his summary judgment motion, plaintiff cites his second amended complaint as

10  evidence of the physical ailments he suffered as a result of the alleged inadequate exercise.[13]

11  (ECF No. 94-2 at 9 (plaintiff's undisputed facts nos. 64, 65).)

12    In the second amended complaint, plaintiff alleged that he suffered back and neck pain,

13  stiffness, soreness, muscle atrophy, energy loss, shortness of breath, headaches, lethargy, loss of

14  range of motion, humiliation, degradation, emotional distress, mental distress and depression due

15  to inadequate exercise.  (ECF No. 49 at 10.)

16    As discussed above, the determination of the medical causes of plaintiff's symptoms

17  described in the second amended  complaint involve matters that are scientific, technical or

18  require specialized knowledge.  Accordingly, the court cannot consider plaintiff's opinion as a lay

19  witness that the symptoms described above were caused due to inadequate exercise.  See Fed. R.

20  Evid. P. 701.

21    In his summary judgment motion, plaintiff again argues that in Spain v. Procunier, 600

22  F.2d 189 (9th Cir. 1979), the Ninth Circuit held that the constitution requires that inmates receive

23  no less than five hours of outdoor exercise per week.  (ECF No. 94-1 at 13.)  As discussed above,

24  in Spain v. Procunier, the Ninth Circuit did not hold that inmates are constitutionally entitled to

25  no less than five hours per week of outdoor exercise.

26  ////

27
_____

28  [13]  Plaintiff did not submit the medical records he submitted with his opposition to defendants'
summary judgment motion.

1    In the opposition, defendants argue that plaintiff's claim of 2 hours and 16 minutes per

2    week of outdoor exercise during the 90 days disciplinary period did not violate the Eighth

3    Amendment.  (ECF No. 107 at 2.)  In support of this argument, defendants cite Pierce v. County

4    of Orange, 526 F.3d 1190 (9th Cir. 2008), where the Ninth Circuit found that two hours of

5    exercise per week for pretrial detainees who spent twenty-two hours or more in their cells was

6    constitutional.  Id. at 1212-13.  In Pierce, the Ninth Circuit also observed that the County

7    provided nothing more to justify the almost complete denial of exercise than a generalized

8    reference of institutional security concerns.  Id. at 1212-13.

9    In the opposition, defendants do not address the other activities available to plaintiff

10   during the disciplinary period, discussed in their summary judgment motion.  As discussed above,

11   during the disciplinary period plaintiff lived in an open dormitory, continued his work as a porter,

12   had access to the dayroom, etc.

13   Despite the lack of evidence regarding plaintiff's access to other activities during the

14   disciplinary period, the undersigned does not find that the plaintiff's access to 2 hours and 16

15   minutes of outdoor exercise per week for 90 days as punishment for committing a serious rules

16   violation violated the Eighth Amendment.  Pierce, supra.  Accordingly, plaintiff's motion for

17   summary judgment as to his Eighth Amendment claim should be denied.

18        D.  State Law Claims

19   Plaintiff moves for summary judgment as to his state law negligence claims against

20   defendant Wise.  (ECF No. 94-1 at 14.)  Plaintiff argues that he has a procedural right under

21   California law to present documentary evidence, present witness testimony and to question

22   witnesses.  (Id. at 12.)  Plaintiff argues that defendant Wise breached his duty to allow plaintiff to

23   present the surveillance video and Daria declaration and to ask inmate Maxwell and Officer Airey

24   questions.  (Id.)

25   As discussed above, defendants should be granted summary judgment as to this claim

26   because plaintiff failed to present the factual basis of this claim in his tort claim.  For this reason,

27   plaintiff may not proceed on his negligence claim against defendant Wise.  Accordingly,

28   plaintiff's motion for summary judgment as to his negligence claim against defendant Wise

1     should be denied.

2             Accordingly, IT IS HEREBY RECOMMENDED that:

3             1.   Defendants' summary judgment motion (ECF No. 90) be granted; and

4             2.   Plaintiff's summary judgment motion (ECF No. 94) be denied.

5             These findings and recommendations are submitted to the United States District Judge

6     assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

7     after being served with these findings and recommendations, any party may file written

8     objections with the court and serve a copy on all parties.  Such a document should be captioned

9     "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

10    objections shall be filed and served within fourteen days after service of the objections.  The

11    parties are advised that failure to file objections within the specified time may waive the right to

12    appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

13    Dated:  February 7, 2022

14

15                                                KENDALL J. NEWMAN
                                                  UNITED STATES MAGISTRATE JUDGE
16

17

18

19

20    Wit974.sj(4)
21

22

23

24

25

26

27

28

                                                   43